UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE UNITE HERE
NATIONAL HEALTH FUND; TRUSTEES OF
THE UNITE HERE NATIONAL
RETIREMENT FUND; and TRUSTEES OF
THE LUGGAGE WORKERS UNION
RETIREMENT FUND,

                    Plaintiffs,

-against-

BAG SPECIALIST, INC.,

                    Defendant.

07-CV-06188  (RMB)(MHD)

**DECLARATION OF DAVID C.
SAPP IN SUPPORT OF
APPLICATION FOR AN  AWARD
OF DAMAGES, INTEREST,
LIQUIDATED DAMAGES  AND
COSTS**

**DAVID C. SAPP**, in lieu of an affidavit, as permitted by 28 U.S.C. § 1746 and Local Civil Rule 1.10 of the United States District Court for the Southern District of New York, declares as follows:

1.      I am the attorney for the Trustees of the UNITE HERE National Health Fund ("Health Fund"); Trustees of the UNITE HERE National Retirement Fund ("Retirement Fund"); and Trustees of the Luggage Workers Union Retirement Fund ("Luggage Workers Retirement Fund") (hereinafter, "plaintiffs"), and am duly admitted to practice before this Honorable Court and am fully familiar with the facts and prior proceedings had herein.

2.      On November 20, 2007, the Court issued a Default Judgment against defendant Bag Specialist, Inc., and referred the matter to United States Magistrate Judge Michael H. Dolinger for an inquest on damages.

3.      I submit this Affidavit in support of the instant application for an award of damages, interest, liquidated damages and costs.

4.      Upon information and belief, Defendant and an affiliate of UNITE HERE ("the Union") have been parties to a series of collective bargaining agreements covering all relevant periods herein. Pursuant to said collective bargaining agreements, contributions to Plaintiff Funds were and are due to be paid monthly by Defendant.  The

collective bargaining agreements set forth the contribution rates to be used in calculating the amounts due to Plaintiff Funds. Copies of the collective bargaining agreements in force for all relevant time periods are annexed hereto as **Exhibit A**.

5.     As permitted by ERISA Section 502(g)(2), 29 U.S.C. § 1142(g)(2), the Agreements and Declarations of Trust of plaintiff Funds provide for interest on delinquent contributions at the rate of one percent (1%) per month or part thereof, and liquidated damages at an amount equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions. Copies of the relevant sections of the Agreements and Declarations of Trust are annexed hereto as **Exhibit B**. Upon information and belief, for the period of the January 2003 – December 2005 audit, the Funds employed an interest rate of 9% compounded.

6.     The principal amount due to the Health Fund arises from audit deficiencies for the period January 1, 2003 through December 31, 2005 and current contributions for the period August 2006 through July 2007. A copy of the July 16, 2007 audit deficiency demand letter and attached calculation sheet is annexed hereto as **EXHIBIT C**. The delinquent contributions for the period August 2006 through July 2007 was calculated by multiplying $160.90 for each worker covered by the collective bargaining agreement who worked at least one day in the preceding month for the period August 2006 through July 2007. An exhibit showing the calculations underlying all principal amounts sought is annexed hereto as **Exhibit D.** In addition, the contributions due to the Health Fund include contributions for vacation benefit payments for 2007 totaling $15,675.02. See, **Exhibit D** and **Exhibit A** at pages 8 – 10.

7.     The Health Fund is entitled to Judgment in the principal amount of $130,426.08, plus interest on the delinquent contributions from the date such contributions became due and owing to the date hereof in the amount of $15,372.65; liquidated damages at an amount equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions in the amount of $15,372.65; all totaling $161,171.38.

8.    The principal amount due to the Retirement Fund arises from audit deficiencies for the period January 1, 2003 through December 31, 2005 **(Exhibit C)** and current contributions for the period May 2006 through July 2007. The principal amount of delinquent contributions due the Retirement Fund was calculated by multiplying 1.033% of payroll for the months of May 2006 through December 2006, and 1.00% of payroll for the months January 2007 through July 2007. See **Exhibit D.**

9.    The Retirement Fund is entitled to Judgment in the principal amount of $50,749.25, plus interest on the delinquent contributions from the date such contributions became due and owing to the date hereof in the amount of $7,158.38; liquidated damages at an amount equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions in the amount of $2,205.74, all totaling $60,113.37.

10.    The principal amount due to the Luggage Workers Retirement Fund arises from audit deficiencies for the period January 1, 2003 through December 31, 2005 **(Exhibit C),** and current contributions for the period May 2006 through July 2007. The principal amount of delinquent contributions due to the Luggage Workers Retirement Fund was calculated by multiplying 2% of payroll for the period of May 2006 through July 2007. See **Exhibit D.**

11.    The Luggage Workers Retirement Fund is entitled to Judgment in the principal amount of $24,622.61, plus interest on the delinquent contributions from the date such contributions became due and owing to the date hereof in the amount of $3,433.86; liquidated damages at an amount equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions in the amount of $4,063.89, all totaling $32,120.36.

12.    Certain of the payroll amounts on which the principal amounts due are estimates as defendants failed to remit its payroll records to the Funds. Consequently, the payroll amounts are averages extrapolated from the last remittance produced by defendant to plaintiffs. It is well established that awards based on estimates are proper. Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 929 (2d Cir. 1977) (when existence of damages is certain but amount thereof is uncertain, plaintiff will not be denied recovery of substantial damages); Lexington Products, Ltd. v. B.D.

3

Communications, Inc., 677 F.2d 251, 253 (2d Cir. 1982) ("Where a wrong has been done, the courts will endeavor to make a reasonable estimate of damages.").

13.    Plaintiffs are entitled to judgment for costs in the amount of $350.00 for the filing fee of the instant action, as permitted by ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE**, the undersigned respectfully requests that the Court grant Judgment against defendant Bag Specialists., Inc. in the amounts sought herein.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed at New York, New York on February 1, 2008.

By: _____
David C. Sapp (DS5781)

UNITE HERE NATIONAL HEALTH
FUND; UNITE HERE NATIONAL
RETIREMENT FUND; and LUGGAGE
WORKERS UNION RETIREMENT
FUND, Plaintiffs
730 Broadway – 9th Floor
New York, New York 10003
(212) 539-5576

4

**EXHIBIT A**

04/27/03 - 04/26/06                                    # 178 0112

AGREEMENT effective this 27th day of April, 2003 by and between the

INTIMATE APPAREL, EMBROIDERY, BELT & ALLIED WORKERS UNION,

LOCAL 62-32, UNITE, AFL-CIO, successor in interest to the LUGGAGE & BRUSH

WORKERS' UNION, LOCAL 60, AFL-CIO, I.L.G. P.N. & S.W.U., AFL-CIO,

hereinafter referred to as the "Union", and BAG SPECIALIST, INC. currently located at

900 Passaic Avenue, East Newark, New Jersey 07029, hereinafter referred to as the

"Employer", on behalf of itself and its affiliated, subsidiary firms.

## WITNESSETH:

In consideration of the mutual and reciprocal promises herein contained and other

good, valuable and sufficient consideration, the parties hereto agree as follows:

1.    <u>Mutual Consideration</u>:      The parties hereto agree to cooperate and

assist in promoting the welfare, progress and general improvement of the industry and in

the establishment and maintenance of fair and reasonable standards, conditions and

practices throughout the industry.

2.    <u>Union Recognition</u>:    The Employer, on behalf of itself and its subsidiaries and affiliates, acknowledge that the Union represents a majority of the employees employed by the Employer consisting of the workers covered by this agreement, and that the Union is the sole and exclusive bargaining agency for the employees covered by this agreement.  The Employer agrees to recognize the Union during the entire period of this agreement as the sole and exclusive bargaining representative of the workers covered by this agreement.  It is further agreed that neither the Employer nor any of its agents shall directly or indirectly, discourage membership in the Union.

3.    <u>Union Shop and Coverage</u>:    All workers employed by the Employer in any and all branches of work connected with the manufacturer and shipping (except as provided in Paragraph "9") of any and all kinds of suitcases, bags, portfolios, briefcases, specialty cases, and all other kind of luggage and similar or related items, shall be covered by this agreement.

To the fullest extent permitted by Law, it shall be a condition of employment that all workers covered by this agreement who are members of the Union in good standing on the date of execution of this agreement shall remain members in good standing and those who are not members on the date of execution of this agreement, shall on the thirtieth day following the earlier of the date of employment or the date of execution of this agreement become and remain members in good standing of the Union. It shall also be a condition of employment that all workers covered by this agreement hired on or after the date of execution thereof shall, on the thirtieth day following the beginning of such employment, become and remain members in good standing in the Union.

4.    <u>Good Faith</u>:    The Employer agrees to live up to and perform the terms of this agreement in good faith.  The Union agrees to perform and live up, in good faith, to all the terms of this agreement and to prevent strikes and stoppages during the term of this agreement so long as the Employer observes the covenants herein contained on its part to be performed.

6.    <u>Wages</u>:        All wages shall be paid in full to each employee on a

specified day in each and every week.

(a)    <u>Minimum Wage After Thirty (30) Working Days of Employment</u>:    All

new employees shall receive an increase of fifteen ($.15) cents per hour over their

respective hiring rates upon completion of thirty (30) working days of employment.

(b)    <u>Wage Increases</u>:        All workers receive each of the following increases

provided that they have been employed for at least thirty (30) days immediately

preceding each such increase.

| <u>Effective Date</u> | <u>Amount of Increase</u> |
|---|---|
| April 27, 2003 | .25¢ per hour |
| April 5, 2004 | .30¢ per hour |
| April 4, 2005 | .30¢ per hour |

All time workers hired after the effective date of a wage increase who complete

employment for at least thirty (30) days in the three (3) month period subsequent to the

effective date of the wage increase shall receive one-half (1/2) of the above increase

becoming effective in that year.

(c)    <u>No Reduction in Wages or Standards</u>: There shall be no reduction of

wages or lowering of standards during the term provided for in this agreement, except in

compliance with the provisions and procedure specifically prescribed in Paragraph "7"

hereof.

(d)    <u>Vacation Benefit</u>:        The Employer shall forward monthly to the Health

and Welfare Fund of the Luggage Industry-Local 60 referred to in Paragraph "29" of this

agreement, or the designated Arbitrator of such Fund, monthly payroll reports listing all

workers employed by it during the months set forth opposite the name and social security

number of each employee and the amount of his total earnings for the reporting period for

the purpose of paying a Vacation Benefit in an amount equal to 2% of said total earnings.

Such reports may be combined with the regular monthly reports furnished to the Fund.

　　　　For the purpose of providing annual vacation benefits, each Employer shall make

the following annual payments towards the aforesaid Health & Welfare Fund of the

Luggage Industry-Local 60, in addition to the other required payments:

　　　(i) On or before March 31st of each year, a sum equal to 2% of the covered
payroll in the report periods for the ninth month period starting the previous May through
January of the current year.
　　　(ii) On or before June 15th of each year, the differences between the amount paid
pursuant to "(i)" above and a sum equal to 2% of the total earnings of all its employees
covered by this agreement during the twelve (12) month report period ending in April of
the current year, except that the earnings of floor workers and Shipping Clerks whose
employment was terminated prior to the expiration of their respective trial periods, as
provided in Paragraph "9" of this agreement, need not be included in the computation of
such payments.
　　　In the event that the Employer shall cease doing business, the amount which
would otherwise become due and payable hereunder from such Employer to the Health &
Welfare Fund of the Luggage Industry-Local 60 by the June 15th next succeeding the
cessation of business, shall become due and payable immediately upon cessation of
business.
　　　It is the intention of the parties hereto that in each year each employee whose
earnings are included in the calculation of payments to be made hereunder by the
Employer shall receive from the Health & Welfare Fund of the Luggage Industry-Local
60 a vacation benefit equal to 2% of his earnings in accordance with the bylaws, rules
and regulations adopted by the Trustees of the aforesaid Fund.
　　　In the event that for any reason a vacation benefit due to an employee or former
employee for any benefit year is not paid to the Health & Welfare Fund of the Luggage
Industry-Local 60 for that account of such employee or former employee for that benefit
shall be returned to the Employer or Employers which made such payment to the Fund.
However, if any such employee or former employee shall, within six (6) years thereafter
make claim for such benefit, the Employer or Employers to which such monies have been
returned shall make payment thereof to the employee or former employee.

(e)     <u>Added Vacation Pay</u>:     Prior to the start of the vacation, in addition to item (d), the Employer shall pay directly to each employee as an additional benefit, one (1) or more day's pay (based on 7 1/2 hours) in accordance with the following schedule:

An employee who has been employed for a period of less than one (1) year shall not receive any additional vacation pay.

An employee who has been employed for a period of one (1) year but less than two (2) years shall receive one (1) day's pay (7 1/2 hour's pay) at his/her then current rate.

An employee who has been employed for a period of two (2) years but less than three (3) years but less than three (3) years shall receive two and one-half (2 1/2) day's pay (18-3/4 hour's pay) at his/her then current rate.

An employee who has been employed for a period of three (3) years but less than eight (8) years shall receive one (1) week's pay (37 1/2 hour's pay) at his/her then current rate.

An employee who has been employed for a period of eight (8) years or more shall receive two (2) week's pay (75 hours pay) at his/her then current rate.

The length of employment for each worker shall be determined as of July 1st in each year.

Payment of the added vacation pay shall be made prior to the vacation period.

(f)     <u>Length of Service Benefit</u>:     All employee, who as of July 1st in any year have been employed in a shop for ten (10) years or more, shall receive a length of service benefit equal to a full week's pay, which benefit shall be payable by the second week of January of the following year.

(g)     <u>Call-In and Reporting Pay</u>: An employee who reports for work on any regular work day without having received notice not to report by the end of the shift on the preceding day and who is not given at least three and three-quarters (3-3/4) hours work on such day shall receive three and three-quarters (3-3/4) hours pay for that day at his regular rate, unless the cause for the denial of the opportunity to work shall be a power failure, fire, flood or an emergency beyond the ability of the Employer to control,

10

28.    <u>Health & Welfare Fund</u>:    It is agreed that the Employer shall pay to the Health & Welfare Fund of the Luggage Industry-Local 60 not later than the tenth (10th) day of each month a sum equal to $115.00 for each worker covered by this Agreement who worked at least one day in the preceding month for the purpose of providing medical and family prescription drug benefits from Boro Medical  The Employer shall furnish a written report showing details for whom and how the total amount was calculated.

The Trustees on the Board of the Health & Welfare Fund of the Luggage Industry-Local 60 will consist of at least two (2) Union Trustees and two (2) Employer Trustees

It is agreed that the Health & Welfare Fund of the Luggage Industry-Local 60 shall be administered in accordance with the Trust Agreement and plan of benefits adopted by the Trustees of said Fund.  The Union and the Employer agree that the Fund will be the carrier for statutory temporary weekly disability benefits that are not job or work related, i.e. that are not workers compensation cases for which each Employer remains required to have its own coverage, except, if an Employer is more than two (2) months delinquent in its contributions, the Trustees may, along with collection procedures and penalties adopted in respect to delinquent contributions, terminate such benefit coverage for the delinquent Employer and notify the appropriate agencies.

It is agreed that the Employer shall, upon ten (10) days advance notice, make its payroll records with respect to Union members and probationary employees available for audit by the Fund or its designated agent for that purpose.  Such audit may

extend back to records from the later of the most recent previous Fund audit and the date

six (6) years prior to the opening date of current audit.

It is agreed that, upon written request by the Union, the Employer shall furnish to

the Fund copies of any federal W-2 statements for the previous year issued to any Union

member and/or probationary employee.

The Employer and the Union, hereby acknowledge the establishment of said

Fund, and they do hereby acknowledge the due, proper and lawful appointment of the

Trustees presently constituting the Board of Trustees of the said Fund, and do hereby

ratify and approve the Rules and Regulations heretofore adopted by said Board of

Trustees and their acts pursuant thereto, and they do hereby authorize and empower said

Board of Trustees, as same may be constituted from time to time, in its sole discretion, to

amend, modify, change or add to said Rules and Regulations from time to time to carry

out the basic purposes of the Fund and do hereby ratify and agree to be bound by said

Rules and Regulations, as same may be amended, modified, changed or added to.

An annual audit of the Health, Welfare and Insurance Fund shall be made by

accountants designated by the Board of Trustees.  A statement of the result of such audit

shall be made available for inspection to interested persons at the principal office of the

Funds, or at such other places as may be designated by the Board of Trustees.

No Employer shall have any right, title or interest in or to the said funds, or the

administration thereof.  No individual employee shall have any right, title or interest in,

or claim against the said Funds or any part thereof, or to any benefit provided thereunder,

except as prescribed by the Rules and Regulations hereinabove referred to.  Payments

made hereafter into said Funds shall not be used for any purpose which exceeds the purpose provided for by the law applicable to such Funds.

The Union shall have the right to collect any and all monies that may be due to the Funds from an Employer. However, after collecting any monies due to the Funds, the Union shall turn over the amount thereof, less any expenses incurred in the collection, to the Funds. The foregoing power vested in the Union is not to be deemed to diminish in any way the right of the Board of Trustees, in its own name, to collect and enforce the collection by any legal means of any and all monies that may be due to the Funds if they, in their own discretion, should deem it advisable to do so.

The Board of Trustees shall have the right to bring suit against any insurance company or other organization to collect or receive payments or benefits due or claimed to be due to any beneficiary under any policy of insurance or other agreement issued to or entered into by the Board of Trustees of the Fund.

No person shall have the right to assign, transfer, pledge or borrow against any benefits or services available to him from or through the Fund, except as may be provided by any policy of insurance or other contract entered into by the Board of Trustees of the Fund affording such benefits or services.

Only assets of the Fund shall be available for payment of the liabilities and expenses of the Fund, and the payment of such liabilities and expenses shall be made only to the extent that assets are available to make such payment.

No liability whatsoever shall attach hereunder to the Union or any of the Union's own funds, and no claim shall be made against the Union or any of its officers by reason

42

of any alleged obligations arising our of or in connection with the Fund, except as provided in the above paragraph.

No liability whatsoever shall attach hereunder to the Employer and no claim shall be made against any Employer by reason of any alleged obligation arising out of or in connection with the Fund, except that Employers shall be obligated to make contributions to the Fund in accordance with the provisions of their respective collective labor agreements with the Union.

No Trustee shall be liable individually or otherwise for any act or omission in connection with the administration of the Fund, or by reason of any fact or circumstance arising out of the premises, except for his willful misconduct.

Neither the Trustees individually nor the Fund shall be liable for any default, refusal or failure of an insurance company or companies to pay or provide benefit or payment due or claimed to be due to any beneficiary, whether or not such default, failure or refusal shall constitute a breach of the policy of insurance issued for the benefit of such beneficiary.

Neither the Trustees individually nor the Fund shall be liable for any default, refusal or failure to provide any medical, surgical or hospitalization service or other benefit due or claimed to be due by any beneficiary under any policy of insurance or agreement entered into by the Board of Trustees, or for negligent performance of same.

No Trustee shall be paid for his services, but all Trustees shall be reimbursed from the assets of the Fund for all reasonable and necessary expenses which they may incur in the performance of their duties.  All expenses of administration, including the cost and expense of any action or proceeding brought by or against the Board of Trustees

43

(including counsel fees) shall be chargeable to and paid from the Fund estate, except in cases of willful misconduct.

The Board of Trustees shall have the power to engage any person, firm or corporation as administrator of the Fund and to pay a reasonable fee for such service.

Notwithstanding the expiration at some future date of any obligation on the part of Employers to make contributions to the Fund, the Fund shall, nevertheless, continue in existence and the Board of Trustees shall continue to effectuate the purposes of the Fund, subject to the Rules and Regulations thereof, until all of the monies and other assets of the Fund are exhausted, unless the Board of Trustees shall determine that it would be more desirable to transfer their functions to a Trust Company or other similar agency. In the event of such determination, the powers, duties and functions of the Board of Trustees may be transferred to such Trust Company or other similar agency designated by the Board of Trustees, which shall thereafter administer the affairs of the Fund.

The Board of Trustees administering any of the benefit funds is hereby authorized and empowered in its sole discretion and upon such basis as it deems desirable, to transfer or mingle the assets now existing or hereafter established and provided for in a collective agreement with the Union of Needletrades, Industrial and Textile Employees or an affiliate thereof. In the event of such mingling, transfer, or merger, the amounts hereinabove provided to be allocated towards the respective funds shall thereafter be paid over to the fund or funds, with which there has been such mingling, transfer or merger.

This Fund was created and has been accepted by the Board of Trustees in the State of New York, and all questions pertaining to its validity and the interpretation and

application of its Rules and Regulations shall be determined in accordance with the laws

of the State of New York.

29.  <u>Retirement Fund</u>:     It is agreed that the Employer shall pay to the Luggage Workers Union Retirement Fund , not later than the tenth (10th) day of each month, a sum equal to two (2%) percent of the Employer's total weekly payrolls for the preceding month of all its workers covered by this Agreement for the purpose of providing pension benefits.  In addition, effective April 27, 2003, the Employer shall also, not later than the tenth (10th) day of each month, pay to the UNITE National Cotton Pension Fund, sixteen ($.16) cents per hour worked by the workers covered by this Agreement in the preceeding month for the purpose of providing an additional pension benefit.

The Trustees on the Board of the Luggage Workers Union Retirement Fund will consist of at least two (2) Union Trustees and two (2) Employer Trustees.  It is agreed that the Luggage Workers Union Retirement Fund and the UNITE National Cotton Pension Fund shall be administered in accordance with the respective Trust Agreements and plan of benefits adopted by the respective Trustees of each said Fund.

The Employer and the Union, hereby acknowledge the establishment of the said Luggage Workers Union Retirement Fund, and the UNITE National Cotton Pension Fund; and they do hereby acknowledge the due, proper and lawful appointment of the Trustees of the said Funds, and do hereby ratify and approve the Rules and Regulations heretofore adopted by said respective Boards of Trustees and their acts pursuant thereto, and do hereby agree to be bound by said Rules and Regulations, as same may be amended, and do hereby authorize and empower said Boards of Trustees as they may be constituted from time to time, to administer their respective Fund in accordance with said

46

Rules and Regulations and any and all amendments thereto hereafter adopted pursuant to said Rules and Regulations.

Annual audits of the Retirement Funds shall be made by accountants designated by the respective Board of Trustees. Statement of the results of such audits shall be made available for inspection by interested persons at the principal office of the Retirement Fund and at such other places as may be designated by the Boards of Trustees.

No employer shall have any right, title or interest in or to the Retirement Fund or the administration thereof. No individual employee shall have any right, title or interest in, or claim against said Fund or any part thereof, or to any benefit provided thereunder, except as prescribed by the Rules and Regulations adopted as aforesaid. Payments made hereafter into said Fund shall not be used for purposes which exceed the purposes provided for by the law applicable to such Funds.

No Trustee shall be paid for his services, but all Trustees shall be reimbursed from the assets of the Fund for all reasonable and necessary expenses which they may incur in the performance of their duties. All expenses of administration, including the cost and expense of any action or proceeding brought by or against the Board of Trustees (including counsel fees) shall be chargeable to and paid from the Fund estate, except in cases of willful misconduct.

The Boards of Trustees shall have the power to engage any person, firm or corporation as administrator of the Fund and to pay a reasonable fee for such service. Effective April 1, 2004, the Collective Bargaining Agreement shall be reopened for the sole issue of reviewing the contribution level and whether a contribution increase is needed to maintain benefit levels for the remainder of the agreement's term.

45.   Term:

This Agreement shall go into full force and effect as of the date first above

written and shall terminate three years from that effective date, April 26, 2006.

IN WITNESS WHEREOF, the parties hereto have hereunto set their

hands and seals as of the day and year first above written.

Intimate Apparel, Embroidery, Belt
And Allied Workers' union, Local 62-32,
UNITE, successor in interest to the
Luggage & Brush Workers' Union, Local 60,
AFL-CIO, I.L.G.P.N. & S.W.U.

By: _____
        Robert Jordan, Manager


Bag Specialist, Inc.

By: _____
        Harvey Stahl, President

By: _____
        President

To: **UNITE HERE Members**

From: **Bag Specialists Inc. Negotiating Committee**

Subject: **Letter of Agreement**

Reference: **2006 Contract Negotiations**

Date: **April 26, 2006**

Dear UNITE HERE Members,

We are pleased to come to agreement on the next 3 years term of our collective bargaining agreement. As a result of our negotiation, please confirm by signing and returning this document.

**1**-Wage Increase: The Company agrees to .30c per hour increase effective April 27, 2006.A .35c per hour increase effective April 30, 2007 and a .35c per hour increase effective April 28, 2008.

'**2**- Pension: An increase in the UNITE HERE National Retirement contribution to 1.033%. In 2007 it will revert to the 1. % percent requested in January 2006.

**3**- Health Benefits: Increase in the rate from $ 115.00 per month to $ 144.90 for a flat 3year rate.

**4**- Prescription Drugs: Firm will pay an additional $ 16.00 per month per member to cover member's children for $ 750.00 worth of prescription drugs.

### Contract Language Changes

**Paragraph # 5 @ HOURS**: A regular weeks work shall consist of eight hours to be performed Monday through Friday and each day to consist of eight hours, except where amended from time to time by separate written memorandum of agreement.

**Paragraph 19 @ Settlement of Disputes-Arbitration**: Change said Impartial Chairperson from Marshall L. Rosenberg. Esq. to Robert Herzog. Esq.

**Paragraph 28 Health & Welfare Fund: Add the following**:
            It is agreed that persons currently employed, (on the payroll or on layoff with a right of recall prior to April 1, 2006) shall have the right to opt out of the medical program upon the presentation of documentation of the existence of other medical coverage, for each month in which the employee works one (1) day, the employer shall pay the employee a supplement of seventy ($70.00) per month, payable during the third week of each month. Furthermore, regarding employees of the employer that are married to each other, it is acknowledge that the most senior of the said married couple will be covered by the employer's. contribution to the Health Plan and the least senior of the said married couple will be considered to have opted out of the Health Plan and shall receive the seventy ($70.00) dollar per month.

If a member no longer has outside medical coverage and is able to document loss of coverage, the member will immediately be put back on the original Union Health Plan.

**Paragraph 44 UNITE HERE Tip Campaign Committee**: The company shall deduct and transmit to the Treasure of UNITE HERE TIP Campaign Committee the amount of contribution specified for each payroll period or other designated period worked from the wages of those employees who voluntarily authorize such contribution at least 7 days prior to the next scheduled pay period, on the form provided for that purpose by the UNITE HERE TIP Campaign Committee. These transmittals shall occur no later than the fifteenth (15) day of the following month, and shall be accompanied by a list setting forth as to each contribution employee his or her name, address, occupation, rate of PAC payroll deduction by the payroll or other designated period, and contribution amount. The parties acknowledges that the Company's costs of administration of this PAC payroll deduction have been taken into account by the parties in their negotiation of Agreement and have incorporated in the wage, salary and benefits provision of this Agreement. The company shall send these transmittals and this list to: Treasurer, UNITE HERE TIP Campaign Committee, and 275 7th Avenue, New York, NY 10001.

Signature

_____
Robert Jordan

_____
Harvey Stahl

_____
Inez Sanchez

_____
Bidelina Cruz

_____
Beny Benrinda

_____
Rodrigo Coronel

**EXHIBIT B**

AGREEMENT AND DECLARATION OF TRUST
UNITE HERE NATIONAL HEALTH FUND

Amended and Restated Effective as of December 31, 2006

10301591.1

Section 4.04    An Employer is obligated to furnish to the Trustees or their designee information and/or reports, in such form and manner as required by the Trustees, which may include the names of the employees, their Social Security numbers, the hours worked by each employee (including employees not covered by the Fund's plan of benefits as the Trustees may reasonably require), paid hours, unpaid hours, vacation, sick leave and such other information as the Trustees may require in connection with the administration of the Fund.

Section 4.05    An Employer is obligated to make available to the Trustees, the Fund's counsel, auditors, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll and/or other records whenever the Trustees consider such an examination to be reasonably necessary or appropriate.

Section 4.06    If the Trustees or Administrator deem(s) it necessary or appropriate to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the Fund or its designee (the "Auditor") its payroll and other personnel and financial records with respect to present or former employees of the Employer which are necessary for the Auditor to determine the accuracy and completeness of the Contributions remitted to and the reports filed with the Fund by the Employer.

Section 4.07    No Employer shall be entitled to, or may require, the return of any part of the Fund or any part of its Contributions or other payments except that: (a) a Contribution that is made by an Employer by a mistake of fact or law may, if the Trustees conclude that the facts and circumstances so warrant, be credited to the Employer (except as otherwise determined by the Trustees) by the Trustees within six (6) months after the Trustees, in their sole discretion, determine that the Contribution was made by mistake; and (b) a Contribution conditioned upon the deductibility of the Contribution under the Code may be credited to an Employer by the Trustees, at the discretion of the Trustees, within one (1) year after a disallowance of the deduction.

## ARTICLE V – DEFAULT BY AN EMPLOYER

Section 5.01    The Trustees shall from time to time adopt a collection policy that shall provide that an Employer who does not make Contributions within a certain time frame shall be deemed in default of its obligations under the Trust Agreement. If an Employer defaults on its obligations to make Contributions to the Fund, the Trustees or the Administrator may commence against the Employer, or any other individual or entity that may be liable to the Fund for the Contributions, an action in court or an arbitration. The Employer (or other individual or entity) shall be liable to the Fund for all costs incurred by the Fund in collecting such delinquent amounts, including arbitration fees, interest, auditors' fees, attorneys' fees and costs, court costs (including filing fees and service of process costs), incurred by the Fund in the collection of the Employer's Contributions or other payments. The Employer (or other individual or entity) shall also be liable to the Fund for: interest at the rate of one percent (1%) per month or part thereof or at such other rate as the Trustees may from time to time determine, and liquidated damages at an amount equal to the greater of interest on the delinquent Contributions or twenty percent (20%) of the delinquent Contributions.

AGREEMENT AND DECLARATION OF TRUST
UNITE HERE NATIONAL RETIREMENT FUND

Amended and Restated Effective as of December 31, 2006

J 0301590.1

may reasonably require), paid hours, unpaid hours, vacation, sick leave and such other information as the Trustees may require in connection with the administration of the Fund.

Section 4.    An Employer is obligated to make available to the Trustees, the Fund's counsel, auditors, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll and/or other records whenever the Trustees consider such an examination to be reasonably necessary or appropriate.

Section 5.    If the Trustees or Administrator deem(s) it necessary or appropriate to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the Fund or its designee (the "Auditor") its payroll and other personnel and financial records with respect to present or former employees of the Employer which are necessary for the Auditor to determine the accuracy and completeness of the Contributions remitted to and the reports filed with the Fund by the Employer.

Section 6.    No Employer shall be entitled to, or may require, the return of any part of the Fund or any part of its Contributions or other payments except that:    (a) a Contribution that is made by an Employer by a mistake of fact or law may, if the Trustees conclude that the facts and circumstances so warrant, be credited to the Employer (except as otherwise determined by the Trustees) by the Trustees within six (6) months after the Trustees, in their sole discretion, determine that the Contribution was made by mistake; and (b) a Contribution conditioned upon the deductibility of the Contribution under the Code may be credited to an Employer by the Trustees, at the discretion of the Trustees, within one (1) year after a disallowance of the deduction.

B.    DEFAULT BY AN EMPLOYER

Section 1.    The Trustees shall from time to time adopt a collection policy that shall provide that an Employer who does not make Contributions within a certain time frame shall be deemed in default of its obligations under the Trust Agreement. If an Employer defaults on its obligations to make Contributions to the Fund, the Trustees or the Administrator may commence against the Employer, or any other individual or entity that may be liable to the Fund for the Contributions, an action in court or an arbitration. The Employer (or other individual or entity) shall be liable to the Fund for all costs incurred by the Fund in collecting such delinquent amounts, including arbitration fees, interest, auditors' fees, attorneys' fees and costs, court costs (including filing fees and service of process costs), incurred by the Fund in the collection of the Employer's Contributions or other payments. The Employer (or other individual or entity) shall also be liable to the Fund for: interest at the rate of one percent (1%) per month or part thereof (or at such other rate as the Trustees may from time to time determine), and liquidated damages at an amount equal to the greater of interest on the delinquent Contributions or twenty percent (20%) of the delinquent Contributions.

Section 2.    In the event that an Employer fails: to provide adequate reports or records; to provide adequate information when the Trustees or the Administrator request such information pursuant to the Retirement Plan, this Agreement, or the applicable law; or to permit audits by the Fund, the Trustees or Administrator may a commence legal action in court or an

**EXHIBIT C**

**△ Amalgamated Life**

ESTHER FUCALORO
Audit Manager

730 Broadway
New York, NY 10003-9511
212-539-4203
(Fax) 212-844-7798
email: efucaloro@amalgamatedlife.com

July 16, 2007

Richard Krauser
Bag Specialists Inc.
900 Passaic St
East Newark, NJ 07029

                        Account#: 7950112
                        Bill#: 07CT35
                        Period: 01/01/03-12/31/05
                        Amount: $98,846.69

Dear Mr. Krauser:

        Enclosed you will find a copy of our "Summary of Audit Findings" for Health and Retirement Benefit Fund contributions. This is based on our audit of your books and records for the period listed above. The amount due is attributable to the following:

1. The firm under-reported bargaining unit employees payroll for health (percentage), pension and vacation.
2. The firm under-reported bargaining unit employees payroll for insurance (per capita).
3. The firm skipped per capita health payments for June, July and August 2003.
4. The firm did not make any contributions to the Headwear Pension Fund for the period of May 2003 to December 2005.

        Below is the break down of the audit bill:

| | |
|---|---:|
| Funds Due for Health (percentage of payroll) | $4,949.22 |
| Funds Due for Health (per capita) | 37,260.00 |
| Funds Due for Retirement (Luggage) | 4,303.15 |
| Funds Due for Retirement (Headwear) | 39,720.57 |
| Interest Charges | 12,613.75 |
| Total Amount Due | $98,846.69 |

        Should you have any question please contact me as soon as possible but no later than sixty (60) days from the date of this letter. If you have no questions, payment is due in full no later than sixty-five (65) days from the date of this letter.
        This "Preliminary Summary of Audit Findings" does not include payments in transit and only includes payments deposited as of the date printed on the bill.

        Thank you for your anticipated cooperation regarding this matter, I can be reached at 212 539-4203.

Sincerely,

*Esther Fucaloro*
Esther Fucaloro
Audit Manager

C: Robert Jordan, Manager, Disability Services & Allied Workers Jt. Bd., UNITE HERE

Page 1 of 1

**UNITE HERE FUND ADMINISTRATORS**
212 539 4203
**PRELIMINARY AUDIT FINDINGS**

BILL: 07CT35

TO: BAG SPECIALISTS INC.
900 PASSAIC STREET
EAST NEWARK, NJ 07029

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date: | 07/16/07 |
| | | Firm #: | 7950112 |
| | | Association: | |
| | | Audit Period: | 01/01/03 - 12/31/05 |
| | | Remitted Thru: | 12/31/05 |
| | | Interest: | 9.00% COMPOUNDED |

| LINE # DESCRIPTION | PERIOD FROM | PERIOD THRU | CHARGEABLE | REPORTED | NOT REPORTED | RATE | FUNDS DUE | # OF MO. | INTEREST RATE | INTEREST DUE | TOTAL DUE FUNDS + INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Insurance | 01/01/03 - | 04/30/03 | $ 246,356.98 | $ 233,435.62 | $ 12,921.36 | 5.00% | $ 646.07 | 50 | 0.45296 | $ 292.64 | $ 938.71 |
| 2 Luggage Vacation | 01/01/03 - | 12/31/05 | $ 2,320,839.86 | $ 2,105,682.28 | $ 215,157.58 | 2.00% | $ 4,303.15 | 18 | 0.14396 | $ 619.48 | $ 4,922.63 |
| **Subtotal** | | | $ 2,567,196.84 | $ 2,339,117.90 | $ 228,078.94 | | $ 4,949.22 | | | $ 912.12 | $ 5,861.34 |
| 3 Insurance (Per Capita) | 05/01/03 - | 12/31/05 | $ 1,653.00 | $ 1,329.00 | $ 324.00 | 115.00 | $ 37,260.00 | 18 | 0.14396 | $ 5,363.96 | $ 42,623.96 |
| **Subtotal** | | | $ 1,653.00 | $ 1,329.00 | $ 324.00 | | $ 37,260.00 | | | $ 5,363.96 | $ 42,623.96 |
| 4 Luggage Pension | 01/01/03 - | 12/31/05 | $ 2,320,839.86 | $ 2,105,682.28 | $ 215,157.58 | 2.00% | $ 4,303.15 | 18 | 0.14396 | $ 619.48 | $ 4,922.63 |
| **Subtotal** | | | $ 2,320,839.86 | $ 2,105,682.28 | $ 215,157.58 | | $ 4,303.15 | | | $ 619.48 | $ 4,922.63 |
| 5 Headwear Pension | 05/31/03 - | 12/31/05 | 248,253.57 | - | 248,253.57 | 0.16 | $ 39,720.57 | 18 | 0.14396 | $ 5,718.19 | $ 45,438.76 |
| **Subtotal** | | | 248,253.57 | - | 248,253.57 | | $ 39,720.57 | | | $ 5,718.19 | $ 45,438.76 |

**Please issue check and mail with copy of this invoice to:**
UNITE HERE National Health Fund
PO Box 1426 GPO
New York, NY 10116-1426

| TOTAL FUNDS DUE | TOTAL INTEREST DUE | TOTAL DUE FUNDS + INTEREST |
|---|---|---|
| $   86,232.94 | $   12,613.75 | $   98,846.69 |

**DISPUTES MUST BE SUBMITTED IN WRITING WITHIN 60 DAYS. FULL PAYMENT IS DUE WITHIN 65 DAYS IF NO DISPUTE SUBMITTED.**
**IF TOTAL DUE IS A CREDIT, PLEASE APPLY CREDIT TO NEXT MONTH'S REMITTANCE AND ATTACH A COPY OF THIS INVOICE.**

**EXHIBIT D**

PARTIAL LIST ESTIMATE AND AUDIT CONTRIBUTIONS DUE

| UNITE HERE NATIONAL HEALTH FUND | | LUGGAGE RETIREMENT | | UNITE HERE NATIONAL RETIREMENT FUND | | AUDIT | | TOTAL CONTRIBUTIONS DUE |
|---|---|---|---|---|---|---|---|---|
| Formula = $160.90 x 45ee | $ 7,240.50 | Gross wages x 2% = $1,538.29 | | Gross wages x 1.033% | | | | |
| August-06 | $7,240.50 | May-06 | $638.29 | 05/2006-12/2006 | $4,497.68 | 01/01/03-12/31/05 | $98,846.69 | |
| September-06 | $7,240.50 | June-06 | $1,538.59 | | | | | |
| October-06 | $7,240.50 | July-06 | $1,538.59 | | | | | |
| November-06 | $7,240.50 | August-06 | $1,538.59 | | | | | |
| December-06 | $7,240.50 | September-06 | $1,538.59 | Gross wages x 1% | | | | |
| January-07 | $700.00 | October-06 | $1,538.59 | 01/2007-07/2007 | $6,531.00 | | | |
| February-07 | $1,689.45 | November-06 | $1,538.59 | | | | | |
| March-07 | $4,987.89 | December-06 | $1,538.59 | | | | | |
| April-07 | $7,240.50 | January-07 | $1,088.44 | | | | | |
| May-07 | $7,240.50 | February-07 | $129.65 | | | | | |
| June-07 | $7,240.50 | March-07 | $1,538.59 | | | | | |
| July-07 | $7,240.50 | April-07 | $1,538.59 | | | | | |
| | | May-07 | $1,538.59 | | | | | |
| | | June-07 | $1,538.59 | | | | | |
| | | July-07 | $1,538.59 | | | | | |
| VAC 2007 | $15,675.02 | | | | | | | |
| | **$88,216.86** | | **$20,319.46** | | **$11,028.68** | | **$98,846.69** | **$218,411.69** |

**UNITE HERE National Health Fund**

| | | | |
|---|---|---|---|
| Audit Principle | 01/03-12/05 | $ 42,209.22 | |
| Audit Interest | 01/03-12/05 | $ 6,276.08 | |
| Estimated contributions | 08/06-07/07 | $ 88,216.86 | Formula = $160.90 x 45ee =$7,240.50 |
| | | **$ 136,702.16** | |

**Luggage Pension**

| | | | |
|---|---|---|---|
| Audit Principle | 01/03-12/05 | $ 4,303.15 | |
| Audit Interest | 01/03-12/05 | $ 619.48 | |
| Estimated contributions | 05/06-07/07 | $ 20,319.46 | Gross wages x 2% = $1,538.59 |
| | | **$ 25,242.09** | |

**UNITE HERE National Retirement Fund**

| | | | |
|---|---|---|---|
| Audit Principle | 01/03-12/05 | $ 39,720.57 | |
| Audit Interest | 01/03-12/05 | $ 5,718.19 | |
| Estimated contributions | 05/06-12/06 | $ 4,497.68 | Gross wages x 1.033% = $4,497.68 |
| Estimated contributions | 01/07-7/07 | $ 6,531.00 | Gross wages x 1% = $6,531.00 |
| | | **$ 56,467.44** | |

**FUNDS DUE**     $ 218,411.69

| | | | |
|---|---|---|---|
| Less on A/C | | | -$1,200.00 |
| Subtotal | | | $217,211.69 |
| | | | |
| | | | **$217,211.69** |
| Liquidated Damages on cont. | Rate | 20% | $ 20,778.00 |
| Interest on estimated cont. | | 1% | $ 13,351.14 |
| TOTAL FUNDS DUE | | | **$251,340.83** |

## Bad Specialist

### Unite Here National Health Fund

| Month | Regular Contribution | Interest | Months Delinquent | Interest | Total |
|---|---|---|---|---|---|
| August-06 | $ 7,240.50 | 1.00% | 18 | $ 1,303.29 | $ 8,543.79 |
| September-06 | $ 7,240.50 | 1.00% | 17 | $ 1,230.89 | $ 8,471.39 |
| October-06 | $ 7,240.50 | 1.00% | 16 | $ 1,158.48 | $ 8,398.98 |
| November-06 | $ 7,240.50 | 1.00% | 15 | $ 1,086.08 | $ 8,326.58 |
| December-06 | $ 7,240.50 | 1.00% | 14 | $ 1,013.67 | $ 8,254.17 |
| January-07 | $ 700.00 | 1.00% | 13 | $ 91.00 | $ 791.00 |
| February-07 | $ 1,689.45 | 1.00% | 12 | $ 202.73 | $ 1,892.18 |
| March-07 | $ 4,987.89 | 1.00% | 11 | $ 548.67 | $ 5,536.56 |
| April-07 | $ 7,240.50 | 1.00% | 10 | $ 724.05 | $ 7,964.55 |
| May-07 | $ 7,240.50 | 1.00% | 9 | $ 651.65 | $ 7,892.15 |
| June-07 | $ 7,240.50 | 1.00% | 8 | $ 579.24 | $ 7,819.74 |
| July-07 | $ 7,240.50 | 1.00% | 7 | $ 506.84 | $ 7,747.34 |

Total Contributions: $ 72,541.84
Accrued Interest: $ 9,096.57
Total Amount Due: $ 81,638.41

Liq. Damages   $ 14,508.37

### Luggage Retirement

| Month | Regular Contribution | Interest | Months Delinquent | Interest | Total |
|---|---|---|---|---|---|
| May-06 | $ 638.29 | 1.00% | 21 | $ 134.04 | $ 772.33 |
| June-06 | $ 1,538.59 | 1.00% | 20 | $ 307.72 | $ 1,846.31 |
| July-06 | $ 1,538.59 | 1.00% | 19 | $ 292.33 | $ 1,830.92 |
| August-06 | $ 1,538.59 | 1.00% | 18 | $ 276.95 | $ 1,815.54 |
| September-06 | $ 1,538.59 | 1.00% | 17 | $ 261.56 | $ 1,800.15 |
| October-06 | $ 1,538.59 | 1.00% | 16 | $ 246.17 | $ 1,784.76 |
| November-06 | $ 1,538.59 | 1.00% | 15 | $ 230.79 | $ 1,769.38 |
| December-06 | $ 1,538.59 | 1.00% | 14 | $ 215.40 | $ 1,753.99 |
| January-07 | $ 1,088.44 | 1.00% | 13 | $ 141.50 | $ 1,229.94 |
| February-07 | $ 129.65 | 1.00% | 12 | $ 15.56 | $ 145.21 |
| March-07 | $ 1,538.59 | 1.00% | 11 | $ 169.24 | $ 1,707.83 |
| April-07 | $ 1,538.59 | 1.00% | 10 | $ 153.86 | $ 1,692.45 |
| May-07 | $ 1,538.59 | 1.00% | 9 | $ 138.47 | $ 1,677.06 |
| June-07 | $ 1,538.59 | 1.00% | 8 | $ 123.09 | $ 1,661.68 |
| July-07 | $ 1,538.59 | 1.00% | 7 | $ 107.70 | $ 1,646.29 |

Total Contributions: $ 20,319.46
Accrued Interest: $ 2,814.38
Total Amount Due: $ 23,133.84

Liq. Damages   $ 4,063.89

### Unite Here National Reitrement Fund

| Month | Regular Contribution | Interest | Months Delinquent | Interest | Total |
|---|---|---|---|---|---|
| May-06 | $ 562.21 | 1.00% | 21 | $ 118.06 | $ 680.27 |
| June-06 | $ 562.21 | 1.00% | 20 | $ 112.44 | $ 674.65 |
| July-06 | $ 562.21 | 1.00% | 19 | $ 106.82 | $ 669.03 |
| August-06 | $ 562.21 | 1.00% | 18 | $ 101.20 | $ 663.41 |
| September-06 | $ 562.21 | 1.00% | 17 | $ 95.58 | $ 657.79 |
| October-06 | $ 562.21 | 1.00% | 16 | $ 89.95 | $ 652.16 |
| November-06 | $ 562.21 | 1.00% | 15 | $ 84.33 | $ 646.54 |
| December-06 | $ 562.21 | 1.00% | 14 | $ 78.71 | $ 640.92 |
| January-07 | $ 933.00 | 1.00% | 13 | $ 121.29 | $ 1,054.29 |
| February-07 | $ 933.00 | 1.00% | 12 | $ 111.96 | $ 1,044.96 |
| March-07 | $ 933.00 | 1.00% | 11 | $ 102.63 | $ 1,035.63 |
| April-07 | $ 933.00 | 1.00% | 10 | $ 93.30 | $ 1,026.30 |
| May-07 | $ 933.00 | 1.00% | 9 | $ 83.97 | $ 1,016.97 |
| June-07 | $ 933.00 | 1.00% | 8 | $ 74.64 | $ 1,007.64 |
| July-07 | $ 933.00 | 1.00% | 7 | $ 65.31 | $ 998.31 |

Total Contributions: $ 11,028.68
Accrued Interest: $ 1,440.19
Total Amount Due: $ 12,468.87

Liq. Damages   $ 2,205.74