UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE UNITE HERE NATIONAL HEALTH FUND; TRUSTEES OF THE UNITE HERE NATIONAL RETIREMENT FUND; and TRUSTEES OF THE LUGGAGE WORKERS UNION RETIREMENT FUND,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>BAG SPECIALIST, INC.,<br>                    Defendant. | 07-CV-06188  (RMB)(MHD)<br><br>**DECLARATION OF FLOYD ZAREMBA IN SUPPORT OF APPLICATION FOR AN AWARD OF DAMAGES, INTEREST, LIQUIDATED DAMAGES AND COSTS** |

**FLOYD ZAREMBA**, in lieu of an affidavit, as permitted by 28 U.S.C. § 1746

and Local Civil Rule 1.10 of the United States District Court for the Southern District of

New York, declares as follows:

1.      I am a Field Audit Supervisor employed by Amalgamated Life Insurance

Company ("Amalgamated Life"), an affiliate of the UNITE HERE Funds Administrators,

Inc. ("UHFA") the third-party administrator of the UNITE HERE National Health Fund

("Health Fund"), the UNITE HERE National Retirement Fund ("Retirement Fund"), and

the Luggage Workers Union Retirement Fund ("Luggage Workers Retirement Fund")

(hereinafter, "the Funds" or "plaintiffs").   Amalgamated Life provides field auditing and

collection services to the UHFA.

2.      As Field Audit Supervisor, I supervised the audit of defendant Bag

Specialist, Inc. by Amalgamated Life's field audit staff.  As such, I reviewed defendant's

documents underlying the audit, conferred with the auditors performing the audit and

reviewed the audit before billing the defendant for its audit deficiencies owing to the

Funds.   I also have reviewed the documents underlying the current outstanding

delinquencies and data in Amalgamated Life's computer data bases supporting the

calculation of damages in this action.   Based on the foregoing, I have direct knowledge

and am fully familiar with the facts and circumstances herein.

3.     I submit this Affidavit in support of plaintiffs' application for an award of damages, interest, liquidated damages and costs.

## OBLIGATION TO CONTRIBUTE TO THE FUNDS

4.   Defendant and Intimate Apparel, Embroidery, Belt and Allied Workers Union Local 62-32, UNITE HERE, successor in interest to the Luggage & Brush Workers' Union, Local 60, AFL-CIO, I.L.G.P.N., AFL-CIO ("the Union") have been parties to a series of collective bargaining agreements for the period January 1, 2003 through and including April 26, 2006 ("CBA") as extended and modified by a Letter of Agreement dated April 26, 2006 and having a term of three (3) years thereafter ("LOA"). (A copy of the CBA is annexed hereto as Exhibit A and a copy of the LOA is annexed hereto as Exhibit B.).   The CBA and the LOA were executed on behalf of the Union by Robert Jordan, Union Manager, and on behalf of defendant by Harvey Stahl, defendant's president.  Pursuant to the CBA and the LOA, contributions to plaintiff Funds were and are due to be paid monthly by defendant.  The CBA and LOA set forth the contribution rates to be used in calculating the amounts due to Plaintiff Funds.

## CONTRIBUTIONS OWING TO THE HEALTH FUND

5.   For the period of August 2006 through and including July 2007, the CBA as extended and modified by the LOA obligated defendant to make contributions to the Health Fund at the contribution rate of $144.90 per month per employee for health insurance and $16.00 per month per employee for prescription drug coverage, all totaling $160.90 per month per employee. (Exhibit B at paragraphs 3 and 4).

6.   The last monthly remittance report submitted to the Funds by the defendant on

June 22, 2006 for the reporting period of April 2006 reflected a total of 47 employees for whom defendant should have remitted Health Fund contributions. (A copy of the Employer Receipts Report generated from plaintiffs' computer data base for defendant is attached hereto as Exhibit C). The monthly Health Fund contribution of $160.90 per employee is multiplied by 47 employees resulting in an estimated monthly contribution of $7,562.30. The estimated total of $7,562.30 per month is multiplied by twelve (the number of months which defendant did not remit Health Fund contributions for its employees), which results in a total due to the Health Fund of $90,747.60. This amount is reduced by partial payments of $6,540.00 for the month of January 2007, $5,556.05 for the month of February 2007, and $2,252.61 for the month of March 2007, reflecting total payments of $14,348.66, which results in a total principal amount due to the Health Fund of $76,398.94.

7. The CBA as extended and modified by the LOA also provided for a Vacation Benefit which was administered by the Health Fund. For the period January 2007 through and including July 2007, the CBA established a contribution rate to the Health Fund for the Vacation Benefit of two percent (2%) of payroll. (Exhibit A at page 8, paragraph 6(d); Exhibit B). The Health Fund estimated defendant's monthly payroll based on the last payroll remittance report produced by defendant to the Health Fund on June 22, 2006 for April 2006. (Exhibit C). Application of the two percent (2%) contribution rate to the estimated monthly payroll results in the following contributions owing to the Health Fund for the Vacation Benefit for the period January 2007 through July 2007:

3

| Month | Contribution Rate | Payroll Amount | Contributions Due |
|-------|-------------------|----------------|-------------------|
| Jan-07 | 2% | $  54,424.29 | $  1,088.49 |
| Feb-07 | 2% | $  54,424.29 | $  1,088.49 |
| Mar-07 | 2% | $  54,424.29 | $  1,088.49 |
| Apr-07 | 2% | $  54,424.29 | $  1,088.49 |
| May-07 | 2% | $  54,424.29 | $  1,088.49 |
| Jun-07 | 2% | $  54,424.29 | $  1,088.49 |
| Jul-07 | 2% | $  54,424.29 | $  1,088.49 |

TOTAL VACATION BENEFIT
CONTRIBUTIONS DUE TO THE HEALTH FUND    $ 7,619.43

## CONTRIBUTIONS OWING TO THE RETIREMENT FUND

8.   The CBA as extended and modified by the LOA established a contribution rate for the Retirement Fund of 1.033% of payroll for the period of May 2006 through and including December 2006 with a decrease to one percent (1.00%) of payroll for the period of January 2007 through July 2007. (Exhibit C at paragraph 2). The Retirement Fund estimated payroll based on the last payroll remittance report received by the Retirement Fund for the month of April 2006. (Exhibit C).    Application of these contribution rates to the estimated payroll results in the following contributions owing to the Retirement Fund:

| Month | Contribution Rate | Payroll Amount | Contributions Due |
|---|---|---|---|
| May-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Jun-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Jul-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Aug-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Sep-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Oct-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Nov-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Dec-06 | 1.033% | $ 54,424.29 | $ 562.20 |
| Jan-07 | 1.00% | $ 54,424.29 | $ 544.24 |
| Feb-07 | 1.00% | $ 54,424.29 | $ 544.24 |
| Mar-07 | 1.00% | $ 54,424.29 | $ 544.24 |
| Apr-07 | 1.00% | $ 54,424.29 | $ 544.24 |
| May-07 | 1.00% | $ 54,424.29 | $ 544.24 |
| Jun-07 | 1.00% | $ 54,424.29 | $ 544.24 |
| Jul-07 | 1.00% | $ 54,424.29 | $ 544.24 |

TOTAL CONTRIBUTIONS OWING
TO THE RETIREMENT FUND                    $ 8,307.28

9.    Adding the contributions due for each of the months of May 2006 through and including July 2007 results in a total contribution due to the Retirement Fund of $8,307.28

## CONTRIBUTIONS OWING TO THE
## LUGGAGE WORKERS RETIREMENT FUND

10.    For the period of May 2006 through and including July 2007, the CBA as extended and modified by the LOA established a contribution rate for the Luggage Workers Retirement Fund of two percent (2%) of payroll.   (Exhibit A at page 46, paragraph 29; Exhibit B).   The Luggage Workers Retirement Fund estimated defendant's monthly payroll based on the last payroll remittance report received by the Luggage Workers Retirement Fund for April 2006. (Exhibit C). Application of the two percent

5

(2%) contribution rate to the estimated monthly payroll results in the following contributions owing to the Luggage Workers Retirement Fund:

| Month | Contribution Rate | Payroll Amount | Contributions Due |
|-------|------|------|------|
| May-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Jun-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Jul-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Aug-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Sep-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Oct-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Nov-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Dec-06 | 2% | $ 54,424.29 | $ 1,088.49 |
| Jan-07 | 2% | $ 54,424.29 | $ 1,088.49 |
| Feb-07 | 2% | $ 54,424.29 | $ 1,088.49 |
| Mar-07 | 2% | $ 54,424.29 | $ 1,088.49 |
| Apr-07 | 2% | $ 54,424.29 | $ 1,088.49 |
| May-07 | 2% | $ 54,424.29 | $ 1,088.49 |
| Jun-07 | 2% | $ 54,424.29 | $ 1,088.49 |
| Jul-07 | 2% | $ 54,424.29 | $ 1,088.49 |

TOTAL CONTRIBUTIONS OWING TO
LUGGAGE WORKERS RETIREMENT FUND    $16,327.35

11.    Adding the contributions due for each of the months of May 2006 through and including July 2007 results in contributions due to the Luggage Workers Retirement Fund totaling $16,327.35.

### INTEREST AND LIQUIDATED DAMAGES

12.    As permitted by ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), the Agreements and Declarations of Trust of plaintiff Funds provide for interest on delinquent contributions at the rate of one percent (1%) per month or part thereof, and liquidated damages at an amount equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions. (Copies of the relevant sections of the Agreements and Declarations of Trust are annexed hereto as Exhibit D).

13.    The Health Fund is entitled to interest at the rate of one percent (1%) per month or part thereof. (Exhibit D). The estimated contributions due to the Health Fund of $7,562.30 per month is multiplied by one percent (1%) which equals $75.62 and that sum is multiplied by the number of months from the due date of said contributions through July 3, 2008, the date on which the Health Fund makes the instant application. The schedule of interest owed on the Health Fund contributions includes the following:

| Month | Contributions Due | Interest Rate | # of Months | Interest |
|---|---|---|---|---|
| Aug-2006 | $ 7,562.30 | 1% | 23 | $ 1,739.33 |
| Sept-2006 | $ 7,562.30 | 1% | 22 | $ 1,663.70 |
| Oct-2006 | $ 7,562.30 | 1% | 21 | $ 1,588.08 |
| Nov-2006 | $ 7,562.30 | 1% | 20 | $ 1,512.46 |
| Dec-2006 | $ 7,562.30 | 1% | 19 | $ 1,436.84 |
| Jan-2007 | $ 1,022.30 | 1% | 18 | $ 184.01 |
| Feb-2007 | $ 2,006.25 | 1% | 17 | $ 341.06 |
| Mar-2007 | $ 5,309.69 | 1% | 16 | $ 849.55 |
| Apr-2007 | $ 7,562.30 | 1% | 15 | $ 1,134.35 |
| May-2007 | $ 7,562.30 | 1% | 14 | $ 1,058.72 |
| June-2007 | $ 7,562.30 | 1% | 13 | $ 983.10 |
| Jul-2007 | $ 7,562.30 | 1% | 12 | $ 907.48 |

TOTAL INTEREST DUE TO HEALTH FUND FOR CONTRIBUTIONS $13,398.68

14.    The Health Fund also is entitled to interest at the rate of one percent (1% ) per month or part thereof on the delinquent contributions owing to the Health Fund for the Vacation Benefit. The estimated contributions due to the Health Fund for the Vacation Benefit of $1,088.49 per month is multiplied by one percent (1%), the sum of which is multiplied by the number of months from the due date of said contributions through July 3, 2008, the date on which the Health Fund makes the instant application. The schedule of interest owed on the Health Fund contributions includes the following:

| Month | Contributions Due | Interest Rate | # of Months | Interest |
|---|---|---|---|---|
| Jan-07 | $ 1,088.49 | 1% | 18 | $ 195.93 |
| Feb-07 | $ 1,088.49 | 1% | 17 | $ 185.04 |
| Mar-07 | $ 1,088.49 | 1% | 16 | $ 174.16 |
| Apr-07 | $ 1,088.49 | 1% | 15 | $ 163.27 |
| May-07 | $ 1,088.49 | 1% | 14 | $ 152.39 |
| Jun-07 | $ 1,088.49 | 1% | 13 | $ 141.50 |
| Jul-07 | $ 1,088.49 | 1% | 12 | $ 130.62 |

TOTAL INTEREST DUE TO HEALTH FUND
ARISING FROM VACATION BENEFIT CONTRIBUTIONS    $ 1,142.91

15.    The amount of liquidated damages due to the Health Fund is the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions. (Exhibit D). The amount of interest due to the Health Fund is $13,398.68 for delinquent contributions and $1,142.91 on the Vacation Benefit contributions for total interest due of $14,541.59. Twenty percent (20%) of the delinquent contributions of $84,018.40 owing to the Health Fund is $16,803.68.  As $16,803.68 is greater than the amount of interest due, defendant owes liquidated damages to the Health Fund in the amount of $16,803.68.

16.    The Retirement Fund is entitled to interest at the rate of one percent (1%) of the delinquent contributions per month or part thereof.    (Exhibit D).    The contributions due to the Retirement Fund per month is multiplied by one percent (1%) and that sum is multiplied by the number of months from the due date of said contributions through July 3, 2008, the date on which the Retirement Fund makes the

8

instant application. The schedule of interest owed on the Retirement Fund contributions includes the following:

| Month | Contributions Due | Interest | # of Months | Interest |
|-------|-------------------|----------|-------------|----------|
| May-06 | $ 562.20 | 1% | 26 | $ 146.17 |
| Jun-06 | $ 562.20 | 1% | 25 | $ 140.55 |
| Jul-06 | $ 562.20 | 1% | 24 | $ 134.93 |
| Aug-06 | $ 562.20 | 1% | 23 | $ 129.31 |
| Sep-06 | $ 562.20 | 1% | 22 | $ 123.68 |
| Oct-06 | $ 562.20 | 1% | 21 | $ 118.06 |
| Nov-06 | $ 562.20 | 1% | 20 | $ 112.44 |
| Dec-06 | $ 562.20 | 1% | 19 | $ 106.82 |
| Jan-07 | $ 544.24 | 1% | 18 | $ 97.96 |
| Feb-07 | $ 544.24 | 1% | 17 | $ 92.52 |
| Mar-07 | $ 544.24 | 1% | 16 | $ 87.08 |
| Apr-07 | $ 544.24 | 1% | 15 | $ 81.67 |
| May-07 | $ 544.24 | 1% | 14 | $ 76.19 |
| Jun-07 | $ 544.24 | 1% | 13 | $ 70.75 |
| Jul-07 | $ 544.24 | 1% | 12 | $ 65.31 |

TOTAL INTEREST DUE TO RETIREMENT FUND                    $ 1,583.44

17.     The amount of liquidated damages due to the Retirement Fund is the greater of the interest due on the delinquent contributions or twenty percent (20%) of the delinquent contributions. The amount of interest due to the Retirement Fund is $1,583.44 while twenty percent (20%) of the delinquent contributions of $7,915.88 owing to the Retirement Fund is $1,583.18. As $1,583.44 is greater than twenty percent (20%) of the principal due, defendant owes liquidated damages to the Retirement Fund in the amount of $1,583.44.

18.     The Luggage Workers Retirement Fund is entitled to interest at the rate of one percent (1%) of the delinquent contributions per month or part thereof. (Exhibit D). The contributions due to the Luggage Workers Retirement Fund per month is multiplied by one percent (1%) and that sum is multiplied by the number of months from the due date of said contributions through July 3, 2008, the date on which the Luggage Workers Retirement Fund makes the instant application. The schedule of interest owed on the Luggage Workers Retirement Fund contributions includes the following:

| Month | Contributions Due | Interest Rate | # of Months | Interest |
|---|---|---|---|---|
| May-06 | $ 1,088.49 | 1% | 26 | $ 283.00 |
| Jun-06 | $ 1,088.49 | 1% | 25 | $ 272.12 |
| Jul-06 | $ 1,088.49 | 1% | 24 | $ 261.24 |
| Aug-06 | $ 1,088.49 | 1% | 23 | $ 250.35 |
| Sep-06 | $ 1,088.49 | 1% | 22 | $ 239.47 |
| Oct-06 | $ 1,088.49 | 1% | 21 | $ 228.58 |
| Nov-06 | $ 1,088.49 | 1% | 20 | $ 217.70 |
| Dec-06 | $ 1,088.49 | 1% | 19 | $ 206.81 |
| Jan-07 | $ 1,088.49 | 1% | 18 | $ 195.93 |
| Feb-07 | $ 1,088.49 | 1% | 17 | $ 185.04 |
| Mar-07 | $ 1,088.49 | 1% | 16 | $ 174.16 |
| Apr-07 | $ 1,088.49 | 1% | 15 | $ 163.27 |
| May-07 | $ 1,088.49 | 1% | 14 | $ 152.39 |
| Jun-07 | $ 1,088.49 | 1% | 13 | $ 141.50 |
| Jul-07 | $ 1,088.49 | 1% | 12 | $ 130.62 |

TOTAL INTEREST DUE TO LUGGAGE
WORKERS RETIREMENT FUND                          $ 3,102.18

19.    The amount of liquidated damages due to the Luggage Workers Retirement Fund is the greater of the interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions. (Exhibit D). The amount of interest due to the Luggage Workers Retirement Fund is $3,102.18 while twenty percent (20%) of the delinquent contributions owing to the Luggage Workers Retirement Fund is $3,107.97. As $3,107.97 is greater than the amount of interest due, defendant owes liquidated damages to the Luggage Workers Retirement Fund in the amount of  $3,107.97.

### THE AUDIT DEFICIENCIES

20.    Defendant also is liable to the Funds for audit deficiencies for the period January 1, 2003 through December 31, 2005, which is set forth in the Funds' July 16, 2007 audit deficiency demand letter and attached calculation sheet.  (A copy of the July 16, 2007 audit demand with attached calculation sheet is annexed hereto as Exhibit E.).

The audit was performed by staff under my direct supervision and I reviewed the audit and supporting documents prior to transmittal of the July 16, 2007 audit bill to defendant.

21.    The Health Fund audit deficiency is calculated using a percentage of payroll formula for the period January 1, 2003 through April 30, 2003 and a per capita formula for the period of May 1, 2003 through December 31, 2005.   The percentage of payroll formula employs a contribution rate of five percent (5%) and the per capita formula uses a contribution rate of $115.00 per month per employee. (Exhibit A at page 40, paragraph 28).

22.    The percentage of payroll formula multiplies the underreported amount of payroll by five percent (5%), the Health Fund contribution rate for the period January 1, 2003 through April 30, 2003.[1]   The audit revealed that defendant's chargeable payroll for the period January 1, 2003 through April 30, 2003 is $246,356.98 and that defendant reported payroll of only $233,435.62 thereby leaving $12,921.36 in unreported payroll. By multiplying the unreported payroll amount of $12,921.36 by the percentage of payroll contribution rate of five percent (5%) results in contribution deficiencies of $646.07. The audit applied a nine percent (9%) interest rate to all outstanding audit deficiencies. Multiplying the audit deficiency to the Health Fund in the amount of $646.07 times nine percent (9%) interest times 50 months, the number of months between when the contributions became due and owing to the date of the July 16, 2007 audit bill, results in interest due of $292.64.  Addition of the principal amount of $646.07 to the interest of

---

[1]  Despite diligent efforts, plaintiffs have been unable to locate a copy of the collective bargaining agreement covering the period April 1999 through April 30, 2003.  Attached hereto as Exhibit E is a copy of the schedule of contribution rates applicable to defendant for the period January 1, 2003 through and including April 30, 2003 which is maintained in the ordinary course of business in Amalgamated Life's computer data base.   The schedule identifies the Health Fund contribution rate as five percent (5%) of payroll for the period January 1, 2003 through April 30, 2003.

$292.64 results in a total of $938.71 due to the Health Fund for the audit deficiencies for the period of January 1, 2003 through April 30, 2003.

23.     For the period of May 1, 2003 through and including December 31, 2005, the CBA provided contribution rates for the Health Fund of $115.00 per month per employee. (Exhibit A at page 40, paragraph 28). Defendant reported 1,653 employees for the period May 1, 2003 through and including December 31, 2005 but the audit revealed a total number of employees for whom the defendant should have remitted as totaling, 1,329, thereby leaving 324 employees unreported by defendant and for which contributions were due from defendant.[2] Multiplying the 324 unreported employees times $115.00 per employee contribution rate results in total audit deficiencies of $37,260.00. Multiplying the audit deficiency to the Health Fund of $37,260.00 times nine percent (9%) interest times 18 months, the number of months between when the contributions became due and owing to date of the July 16, 2007 audit bill, results in interest due of $5,363.96. Addition of the principal amount of $37,260.00 to $5,363.96 in interest results in a total of $42,623.96 due to the Health Fund for audit deficiencies for the period of May 1, 2003 through December 31, 2005.

24.     The audit bill also employs the percentage of payroll formula required under the CBA for the contribution rates for the Luggage Workers Retirement Fund. This formula multiplies the underreported amount of payroll by two percent (2%), the Luggage Workers Retirement Fund contribution rate set forth in the CBA. The audit revealed that defendant's chargeable payroll for the period January 1, 2003 through December 31, 2005 is $2,320,839.86 and that defendant reported payroll of only

---

[2] Line 3 on page 1 of 1 of the July 16, 2007 audit bill mistakenly includes the dollar symbol of "$" in reference to the number of chargeable, reported and unreported employees.

12

$2,105,682.28, thereby leaving $215,157.58 in unreported chargeable payroll. By multiplying the unreported payroll amount of $215,157.58 times the percentage of payroll contribution rate of two percent (2%) results in contribution deficiencies of $4,303.15. As noted above, the audit applied a nine percent (9%) interest rate to all outstanding audit deficiencies. Multiplying the audit deficiency to the Luggage Workers Retirement Fund in the amount of $4,303.15 times nine percent (9%) interest times 18 months, the number of months between when the contributions became due and owing to the July 16, 2007 date of the audit bill, results in interest due of $619.48. Addition of the principal amount of $4,303.15 to interest in the amount of $619.48 results in a total of $4,922.63 due to the Luggage Workers Retirement Fund for the audit deficiencies for the period of January 1, 2003 through December 31, 2005.

25.    The audit also included contributions due for the Vacation Benefit administered by the Health Fund. The CBA established a contribution rate to the Health Fund for the Vacation Benefit of two percent (2%) of payroll. Identical to the calculation of the amounts due to the Luggage Workers Retirement Fund, the audit of defendant's books and records revealed that chargeable payroll of $2,320,839.86 was underreported by $215,157.58 for the period January 1, 2003 through December 31, 2005. Application of the two percent (2%) contribution rate to the underreported payroll of $215,157.58 results in contributions of $4,303.15 owed to the Health Fund for the Vacation Benefit for the period January 1, 2003 through December 31, 2005. Multiplying the audit deficiency to the Health Fund for the Vacation Benefit in the amount of $4,303.15 times nine percent (9%) interest times 18 months, the number of months between when the contributions became due and owing to the July 16, 2007 date of the audit bill, results in

interest due of $619.48. Addition of the principal amount of $4,303.15 to interest of $619.48 results in a total of $4,922.63 due to the Health Fund for the audit deficiencies for Vacation Benefit for the period of January 1, 2003 through December 31, 2005.

26.    The CBA also required contributions of sixteen cents ($.16) per hour worked by workers covered by the CBA to the UNITE National Cotton Pension Fund – Headwear Division ("Cotton Fund"),[3] effective April 23, 2003. The audit of defendant's books and records disclosed that defendant had failed to remit the sixteen cents ($.16) per hour  worked on a total of 248,253.57 hours worked for the period May 31, 2003 through and including December 31, 2005. Multiplying 248,253.57 hours worked times the CBA-mandated contribution rate of sixteen cents ($.16) per hour worked results in an audit deficiency in contributions totaling $39,720.57.

27.    Multiplying the audit deficiency to the Cotton Fund  in the amount of $39,720.57 times nine percent (9%) interest times 18 months, the number of months between when the contributions became due and owing to the July 16, 2007 date of the audit bill, results in interest due of $5,718.19. Addition of the principal amount due of $39,720.57 to interest in the amount of $5,718.19 results in a total of $45,438.76 due to the Cotton Fund for the period of May 31, 2003 through and including December 31, 2005.

28.    The Funds also incurred costs in the amount of $350.00 for the filing fee of the instant action, which should be awarded as permitted by ERISA Section 502(g)(2)(D), 29 U.S.C.  § 1132(g)(2)(D).

**WHEREFORE**, the undersigned respectfully requests that the Court grant Judgment against defendant Bag Specialists., Inc. in the amounts sought herein.

---

[3]  The Cotton Fund was a predecessor pension fund to plaintiff Retirement Fund.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed at New York, New York on July 3, 2008.

By: _____
Floyd Zaremba

AMALGAMATED LIFE INSURANCE
COMPANY, ADMINISTRATOR OF
UNITE HERE NATIONAL HEALTH
FUND;  UNITE HERE NATIONAL
RETIREMENT FUND;  and LUGGAGE
WORKERS UNION RETIREMENT
FUND, Plaintiffs
730 Broadway – 9th Floor
New York, New York 10003

15

**EXHIBIT A**

AGREEMENT effective this 27th day of April, 2003 by and between the

INTIMATE APPAREL, EMBROIDERY, BELT & ALLIED WORKERS UNION,

LOCAL 62-32, UNITE, AFL-CIO, successor in interest to the LUGGAGE & BRUSH

WORKERS' UNION, LOCAL 60, AFL-CIO, I.L.G. P.N. & S.W.U., AFL-CIO,

hereinafter referred to as the "Union", and BAG SPECIALIST, INC. currently located at

900 Passaic Avenue, East Newark, New Jersey 07029, hereinafter referred to as the

"Employer", on behalf of itself and its affiliated, subsidiary firms.

## WITNESSETH:

In consideration of the mutual and reciprocal promises herein contained and other

good, valuable and sufficient consideration, the parties hereto agree as follows:

1.    <u>Mutual Consideration:</u>    The parties hereto agree to cooperate and assist in promoting the welfare, progress and general improvement of the industry and in the establishment and maintenance of fair and reasonable standards, conditions and practices throughout the industry.

2.    <u>Union Recognition</u>:    The Employer, on behalf of itself and its subsidiaries and affiliates, acknowledge that the Union represents a majority of the employees employed by the Employer consisting of the workers covered by this agreement, and that the Union is the sole and exclusive bargaining agency for the employees covered by this agreement.  The Employer agrees to recognize the Union during the entire period of this agreement as the sole and exclusive bargaining representative of the workers covered by this agreement.  It is further agreed that neither the Employer nor any of its agents shall directly or indirectly, discourage membership in the Union.

3.     Union Shop and Coverage:     All workers employed by the Employer in any and all branches of work connected with the manufacturer and shipping (except as provided in Paragraph "9") of any and all kinds of suitcases, bags, portfolios, briefcases, specialty cases, and all other kind of luggage and similar or related items, shall be covered by this agreement.

To the fullest extent permitted by Law, it shall be a condition of employment that all workers covered by this agreement who are members of the Union in good standing on the date of execution of this agreement shall remain members in good standing and those who are not members on the date of execution of this agreement, shall on the thirtieth day following the earlier of the date of employment or the date of execution of this agreement become and remain members in good standing of the Union. It shall also be a condition of employment that all workers covered by this agreement hired on or after the date of execution thereof shall, on the thirtieth day following the beginning of such employment, become and remain members in good standing in the Union.

4.    <u>Good Faith</u>:    The Employer agrees to live up to and perform the terms of this agreement in good faith. The Union agrees to perform and live up, in good faith, to all the terms of this agreement and to prevent strikes and stoppages during the term of this agreement so long as the Employer observes the covenants herein contained on its part to be performed.

6.    <u>Wages</u>:    All wages shall be paid in full to each employee on a specified day in each and every week.

(a)    <u>Minimum Wage After Thirty (30) Working Days of Employment</u>:    All new employees shall receive an increase of fifteen ($.15) cents per hour over their respective hiring rates upon completion of thirty (30) working days of employment.

(b)    <u>Wage Increases</u>:    All workers receive each of the following increases provided that they have been employed for at least thirty (30) days immediately preceding each such increase.

| Effective Date | Amount of Increase |
|---|---|
| April 27, 2003 | .25¢ per hour |
| April 5, 2004 | .30¢ per hour |
| April 4, 2005 | .30¢ per hour |

All time workers hired after the effective date of a wage increase who complete employment for at least thirty (30) days in the three (3) month period subsequent to the effective date of the wage increase shall receive one-half (1/2) of the above increase becoming effective in that year.

(c)    <u>No Reduction in Wages or Standards</u>: There shall be no reduction of wages or lowering of standards during the term provided for in this agreement, except in compliance with the provisions and procedure specifically prescribed in Paragraph "7" hereof.

(d)    <u>Vacation Benefit</u>:    The Employer shall forward monthly to the Health and Welfare Fund of the Luggage Industry-Local 60 referred to in Paragraph "29" of this agreement, or the designated Arbitrator of such Fund, monthly payroll reports listing all

8

workers employed by it during the months set forth opposite the name and social security number of each employee and the amount of his total earnings for the reporting period for the purpose of paying a Vacation Benefit in an amount equal to 2% of said total earnings. Such reports may be combined with the regular monthly reports furnished to the Fund.

For the purpose of providing annual vacation benefits, each Employer shall make the following annual payments towards the aforesaid Health & Welfare Fund of the Luggage Industry-Local 60, in addition to the other required payments:

(i) On or before March 31st of each year, a sum equal to 2% of the covered payroll in the report periods for the ninth month period starting the previous May through January of the current year.

(ii) On or before June 15th of each year, the differences between the amount paid pursuant to "(i)" above and a sum equal to 2% of the total earnings of all its employees covered by this agreement during the twelve (12) month report period ending in April of the current year, except that the earnings of floor workers and Shipping Clerks whose employment was terminated prior to the expiration of their respective trial periods, as provided in Paragraph "9" of this agreement, need not be included in the computation of such payments.

In the event that the Employer shall cease doing business, the amount which would otherwise become due and payable hereunder from such Employer to the Health & Welfare Fund of the Luggage Industry-Local 60 by the June 15th next succeeding the cessation of business, shall become due and payable immediately upon cessation of business.

It is the intention of the parties hereto that in each year each employee whose earnings are included in the calculation of payments to be made hereunder by the Employer shall receive from the Health & Welfare Fund of the Luggage Industry-Local 60 a vacation benefit equal to 2% of his earnings in accordance with the bylaws, rules and regulations adopted by the Trustees of the aforesaid Fund.

In the event that for any reason a vacation benefit due to an employee or former employee for any benefit year is not paid to the Health & Welfare Fund of the Luggage Industry-Local 60 for that account of such employee or former employee for that benefit shall be returned to the Employer or Employers which made such payment to the Fund. However, if any such employee or former employee shall, within six (6) years thereafter make claim for such benefit, the Employer or Employers to which such monies have been returned shall make payment thereof to the employee or former employee.

(e)    Added Vacation Pay:    Prior to the start of the vacation, in addition

to item (d), the Employer shall pay directly to each employee as an additional benefit,

one (1) or more day's pay (based on 7 1/2 hours) in accordance with the following

schedule:

An employee who has been employed for a period of less than one (1)
year shall not receive any additional vacation pay.
An employee who has been employed for a period of one (1) year but less
than two (2) years shall receive one (1) day's pay (7 1/2 hour's pay) at his/her then current
rate.
An employee who has been employed for a period of two (2) years but
less than three (3) years but less than three (3) years shall receive two and one-half (2
1/2) day's pay (18-3/4 hour's pay) at his/her then current rate.
An employee who has been employed for a period of three (3) years but
less than eight (8) years shall receive one (1) week's pay (37 1/2 hour's pay) at his/her
then current rate.
An employee who has been employed for a period of eight (8) years or
more shall receive two (2) week's pay (75 hours pay) at his/her then current rate.
The length of employment for each worker shall be determined as of July
1st in each year.
Payment of the added vacation pay shall be made prior to the vacation
period.

(f)    Length of Service Benefit:    All employee, who as of July 1st in any year

have been employed in a shop for ten (10) years or more, shall receive a length of service

benefit equal to a full week's pay, which benefit shall be payable by the second week of

January of the following year.

(g)    Call-In and Reporting Pay: An employee who reports for work on any

regular work day without having received notice not to report by the end of the shift on

the preceding day and who is not given at least three and three-quarters (3-3/4) hours

work on such day shall receive three and three-quarters (3-3/4) hours pay for that day at

his regular rate, unless the cause for the denial of the opportunity to work shall be a

power failure, fire, flood or an emergency beyond the ability of the Employer to control,

10

28.    <u>Health & Welfare Fund:</u>    It is agreed that the Employer shall pay to the Health & Welfare Fund of the Luggage Industry-Local 60 not later than the tenth (10th) day of each month a sum equal to $115.00 for each worker covered by this Agreement who worked at least one day in the preceding month for the purpose of providing medical and family prescription drug benefits from Boro Medical  The Employer shall furnish a written report showing details for whom and how the total amount was calculated.

The Trustees on the Board of the Health & Welfare Fund of the Luggage Industry-Local 60 will consist of at least two (2) Union Trustees and two (2) Employer Trustees

It is agreed that the Health & Welfare Fund of the Luggage Industry-Local 60 shall be administered in accordance with the Trust Agreement and plan of benefits adopted by the Trustees of said Fund. The Union and the Employer agree that the Fund will be the carrier for statutory temporary weekly disability benefits that are not job or work related, i.e. that are not workers compensation cases for which each Employer remains required to have its own coverage, except, if an Employer is more than two (2) months delinquent in its contributions, the Trustees may, along with collection procedures and penalties adopted in respect to delinquent contributions, terminate such benefit coverage for the delinquent Employer and notify the appropriate agencies.

It is agreed that the Employer shall, upon ten (10) days advance notice, make its payroll records with respect to Union members and probationary employees available for audit by the Fund or its designated agent for that purpose. Such audit may

40

extend back to records from the later of the most recent previous Fund audit and the date six (6) years prior to the opening date of current audit.

It is agreed that, upon written request by the Union, the Employer shall furnish to the Fund copies of any federal W-2 statements for the previous year issued to any Union member and/or probationary employee.

The Employer and the Union, hereby acknowledge the establishment of said Fund, and they do hereby acknowledge the due, proper and lawful appointment of the Trustees presently constituting the Board of Trustees of the said Fund, and do hereby ratify and approve the Rules and Regulations heretofore adopted by said Board of Trustees and their acts pursuant thereto, and they do hereby authorize and empower said Board of Trustees, as same may be constituted from time to time, in its sole discretion, to amend, modify, change or add to said Rules and Regulations from time to time to carry out the basic purposes of the Fund and do hereby ratify and agree to be bound by said Rules and Regulations, as same may be amended, modified, changed or added to.

An annual audit of the Health, Welfare and Insurance Fund shall be made by accountants designated by the Board of Trustees. A statement of the result of such audit shall be made available for inspection to interested persons at the principal office of the Funds, or at such other places as may be designated by the Board of Trustees.

No Employer shall have any right, title or interest in or to the said funds, or the administration thereof. No individual employee shall have any right, title or interest in, or claim against the said Funds or any part thereof, or to any benefit provided thereunder, except as prescribed by the Rules and Regulations hereinabove referred to. Payments

41

made hereafter into said Funds shall not be used for any purpose which exceeds the purpose provided for by the law applicable to such Funds.

The Union shall have the right to collect any and all monies that may be due to the Funds from an Employer. However, after collecting any monies due to the Funds, the Union shall turn over the amount thereof, less any expenses incurred in the collection, to the Funds. The foregoing power vested in the Union is not to be deemed to diminish in any way the right of the Board of Trustees, in its own name, to collect and enforce the collection by any legal means of any and all monies that may be due to the Funds if they, in their own discretion, should deem it advisable to do so.

The Board of Trustees shall have the right to bring suit against any insurance company or other organization to collect or receive payments or benefits due or claimed to be due to any beneficiary under any policy of insurance or other agreement issued to or entered into by the Board of Trustees of the Fund.

No person shall have the right to assign, transfer, pledge or borrow against any benefits or services available to him from or through the Fund, except as may be provided by any policy of insurance or other contract entered into by the Board of Trustees of the Fund affording such benefits or services.

Only assets of the Fund shall be available for payment of the liabilities and expenses of the Fund, and the payment of such liabilities and expenses shall be made only to the extent that assets are available to make such payment.

No liability whatsoever shall attach hereunder to the Union or any of the Union's own funds, and no claim shall be made against the Union or any of its officers by reason

42

of any alleged obligations arising our of or in connection with the Fund, except as provided in the above paragraph.

No liability whatsoever shall attach hereunder to the Employer and no claim shall be made against any Employer by reason of any alleged obligation arising out of or in connection with the Fund, except that Employers shall be obligated to make contributions to the Fund in accordance with the provisions of their respective collective labor agreements with the Union.

No Trustee shall be liable individually or otherwise for any act or omission in connection with the administration of the Fund, or by reason of any fact or circumstance arising out of the premises, except for his willful misconduct.

Neither the Trustees individually nor the Fund shall be liable for any default, refusal or failure of an insurance company or companies to pay or provide benefit or payment due or claimed to be due to any beneficiary, whether or not such default, failure or refusal shall constitute a breach of the policy of insurance issued for the benefit of such beneficiary.

Neither the Trustees individually nor the Fund shall be liable for any default, refusal or failure to provide any medical, surgical or hospitalization service or other benefit due or claimed to be due by any beneficiary under any policy of insurance or agreement entered into by the Board of Trustees, or for negligent performance of same.

No Trustee shall be paid for his services, but all Trustees shall be reimbursed from the assets of the Fund for all reasonable and necessary expenses which they may incur in the performance of their duties. All expenses of administration, including the cost and expense of any action or proceeding brought by or against the Board of Trustees

(including counsel fees) shall be chargeable to and paid from the Fund estate, except in cases of willful misconduct.

The Board of Trustees shall have the power to engage any person, firm or corporation as administrator of the Fund and to pay a reasonable fee for such service.

Notwithstanding the expiration at some future date of any obligation on the part of Employers to make contributions to the Fund, the Fund shall, nevertheless, continue in existence and the Board of Trustees shall continue to effectuate the purposes of the Fund, subject to the Rules and Regulations thereof, until all of the monies and other assets of the Fund are exhausted, unless the Board of Trustees shall determine that it would be more desirable to transfer their functions to a Trust Company or other similar agency. In the event of such determination, the powers, duties and functions of the Board of Trustees may be transferred to such Trust Company or other similar agency designated by the Board of Trustees, which shall thereafter administer the affairs of the Fund.

The Board of Trustees administering any of the benefit funds is hereby authorized and empowered in its sole discretion and upon such basis as it deems desirable, to transfer or mingle the assets now existing or hereafter established and provided for in a collective agreement with the Union of Needletrades, Industrial and Textile Employees or an affiliate thereof. In the event of such mingling, transfer, or merger, the amounts hereinabove provided to be allocated towards the respective funds shall thereafter be paid over to the fund or funds, with which there has been such mingling, transfer or merger.

This Fund was created and has been accepted by the Board of Trustees in the State of New York, and all questions pertaining to its validity and the interpretation and

44

application of its Rules and Regulations shall be determined in accordance with the laws

of the State of New York.

29.    Retirement Fund:    It is agreed that the Employer shall pay to the Luggage Workers Union Retirement Fund , not later than the tenth (10th) day of each month, a sum equal to two (2%) percent of the Employer's total weekly payrolls for the preceding month of all its workers covered by this Agreement for the purpose of providing pension benefits. In addition, effective April 27, 2003, the Employer shall also, not later than the tenth (10th) day of each month, pay to the UNITE National Cotton Pension Fund, sixteen ($.16) cents per hour worked by the workers covered by this Agreement in the preceeding month for the purpose of providing an additional pension benefit.

The Trustees on the Board of the Luggage Workers Union Retirement Fund will consist of at least two (2) Union Trustees and two (2) Employer Trustees. It is agreed that the Luggage Workers Union Retirement Fund and the UNITE National Cotton Pension Fund shall be administered in accordance with the respective Trust Agreements and plan of benefits adopted by the respective Trustees of each said Fund.

The Employer and the Union, hereby acknowledge the establishment of the said Luggage Workers Union Retirement Fund, and the UNITE National Cotton Pension Fund; and they do hereby acknowledge the due, proper and lawful appointment of the Trustees of the said Funds, and do hereby ratify and approve the Rules and Regulations heretofore adopted by said respective Boards of Trustees and their acts pursuant thereto, and do hereby agree to be bound by said Rules and Regulations, as same may be amended, and do hereby authorize and empower said Boards of Trustees as they may be constituted from time to time, to administer their respective Fund in accordance with said

46

Rules and Regulations and any and all amendments thereto hereafter adopted pursuant to said Rules and Regulations.

Annual audits of the Retirement Funds shall be made by accountants designated by the respective Board of Trustees. Statement of the results of such audits shall be made available for inspection by interested persons at the principal office of the Retirement Fund and at such other places as may be designated by the Boards of Trustees.

No employer shall have any right, title or interest in or to the Retirement Fund or the administration thereof. No individual employee shall have any right, title or interest in, or claim against said Fund or any part thereof, or to any benefit provided thereunder, except as prescribed by the Rules and Regulations adopted as aforesaid. Payments made hereafter into said Fund shall not be used for purposes which exceed the purposes provided for by the law applicable to such Funds.

No Trustee shall be paid for his services, but all Trustees shall be reimbursed from the assets of the Fund for all reasonable and necessary expenses which they may incur in the performance of their duties. All expenses of administration, including the cost and expense of any action or proceeding brought by or against the Board of Trustees (including counsel fees) shall be chargeable to and paid from the Fund estate, except in cases of willful misconduct.

The Boards of Trustees shall have the power to engage any person, firm or corporation as administrator of the Fund and to pay a reasonable fee for such service. Effective April 1, 2004, the Collective Bargaining Agreement shall be reopened for the sole issue of reviewing the contribution level and whether a contribution increase is needed to maintain benefit levels for the remainder of the agreement's term.

45.  Term:

This Agreement shall go into full force and effect as of the date first above

written and shall terminate three years from that effective date, April 26, 2006.

IN WITNESS WHEREOF, the parties hereto have hereunto set their

hands and seals as of the day and year first above written.

Intimate Apparel, Embroidery, Belt
And Allied Workers' union, Local 62-32,
UNITE, successor in interest to the
Luggage & Brush Workers' Union, Local 60,
AFL-CIO, I.L.G.P.N. & S.W.U.

By: _____
     Robert Jordan, Manager


Bag Specialist, Inc.

By: _____
     Harvey Stahl, President

By: _____
     President

62

**EXHIBIT B**

To: UNITE HERE Members

From: Bag Specialists Inc. Negotiating Committee

Subject: Letter of Agreement

Reference: 2006 Contract Negotiations

Date: April 26, 2006

Dear UNITE HERE Members,

We are pleased to come to agreement on the next 3 years term of our collective bargaining agreement. As a result of our negotiation, please confirm by signing and returning this document.

1-Wage Increase: The Company agrees to .30c per hour increase effective April 27, 2006.A .35c per hour increase effective April 30, 2007 and a .35c per hour increase effective April 28, 2008.

2- Pension: An increase in the UNITE HERE National Retirement contribution to 1.033%. In 2007 it will revert to the 1. % percent requested in January 2006.

3- Health Benefits: Increase in the rate from $ 115.00 per month to $ 144.90 for a flat 3year rate.

4- Prescription Drugs: Firm will pay an additional $ 16.00 per month per member to cover member's children for $ 750.00 worth of prescription drugs.

### Contract Language Changes

**Paragraph # 5 @ HOURS**: A regular weeks work shall consist of eight hours to be performed Monday through Friday and each day to consist of eight hours, except where amended from time to time by separate written memorandum of agreement.

**Paragraph 19 @ Settlement of Disputes-Arbitration**: Change said Impartial Chairperson from Marshall L. Rosenberg. Esq. to Robert Herzog. Esq.

**Paragraph 28 Health & Welfare Fund: Add the following**:
          It is agreed that persons currently employed, (on the payroll or on layoff with a right of recall prior to April 1, 2006) shall have the right to opt out of the medical program upon the presentation of documentation of the existence of other medical coverage, for each month in which the employee works one (1) day, the employer shall pay the employee a supplement of seventy ($70.00) per month, payable during the third week of each month. Furthermore, regarding employees of the employer that are married to each other, it is acknowledge that the most senior of the said married couple will be covered by the employer's, contribution to the Health Plan and the least senior of the said married couple will be considered to have opted out of the Health Plan and shall receive the seventy ($70.00) dollar per month.

If a member no longer has outside medical coverage and is able to document loss of coverage, the member will immediately be put back on the original Union Health Plan.

**Paragraph 44 UNITE HERE Tip Campaign Committee:** The company shall deduct and transmit to the Treasure of UNITE HERE TIP Campaign Committee the amount of contribution specified for each payroll period or other designated period worked from the wages of those employees who voluntarily authorize such contribution at least 7 days prior to the next scheduled pay period, on the form provided for that purpose by the UNITE HERE TIP Campaign Committee. These transmittals shall occur no later than the fifteenth (15) day of the following month, and shall be accompanied by a list setting forth as to each contribution employee his or her name, address, occupation, rate of PAC payroll deduction by the payroll or other designated period, and contribution amount. The parties acknowledges that the Company's costs of administration of this PAC payroll deduction have been taken into account by the parties in their negotiation of Agreement and have incorporated in the wage, salary and benefits provision of this Agreement. The company shall send these transmittals and this list to: Treasurer, UNITE HERE TIP Campaign Committee, and 275 7th Avenue, New York, NY 10001.


Signature

Robert Jordan

Harvey Stahl

Inez Sánchez

Bidelina Cruz

Beny Benrinda

Rodrigo Coronel

**EXHIBIT C**

```
10:08:23 Jul 03 2008        ** E M P L O Y E R   R E C E I P T S   R E P O R T **        Page 1

JOBBER LEDGER
Emp Num 7950112                                                            Work Period Range : 200603 - 200604
```

| Emp Num | PAID FOR | Dep Date | DpTy | PER FROM | PER TO | App | Rep Qty | Rate | Rep Amount | Fund | Report Bal. | Rpt Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7950112 | BAG SPECIALISTS,INC. | 06/16/06 | BW | 02/27/06 | 03/31/06 | F | 46.00 | 11.50000 | 5290.00 | LBH | 0.00 | AL0701 |
| | | | | 02/27/06 | 03/31/06 | GW | 0.00 | 0.00200 | 0.00 | LBP | 0.00 | |
| | | | | 02/27/06 | 03/31/06 | MC | 0.00 | 0.00000 | 0.00 | LBMC | 0.00 | |
| | | | | 02/27/06 | 03/31/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |
| 7950112 | BAG SPECIALISTS,INC. | 06/22/06 | BW | 02/27/06 | 03/31/06 | GW | 68318.72 | 0.00200 | 1366.38 | LBV | 0.01 | AL2741 |
| 7950112 | BAG SPECIALISTS,INC. | 08/18/06 | CC | 02/27/06 | 03/31/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |
| | | | | 02/27/06 | 03/31/06 | F | 0.00 | 11.50000 | 0.00 | LBH | 0.00 | AL2741 |
| | | | | 02/27/06 | 03/31/06 | GW | 68318.72 | 0.00200 | 1366.37 | LBP | 0.00 | |
| | | | | 02/27/06 | 03/31/06 | MC | 0.00 | 0.00000 | 0.00 | LBMC | 0.00 | AL9541 |
| | | | | 02/27/06 | 03/31/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |
| 7950112 | BAG SPECIALISTS,INC. | 06/22/06 | BW | 04/03/06 | 04/28/06 | GW | 54424.29 | 0.00200 | 108.48 | LBV | -0.01 | AL2743 |
| | | | | 04/03/06 | 04/28/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |
| 7950112 | BAG SPECIALISTS,INC. | 08/18/06 | CC | 04/03/06 | 04/28/06 | F | 0.00 | 11.50000 | 0.00 | LBH | 0.00 | AL9542 |
| | | | | 04/03/06 | 04/28/06 | GW | 54424.29 | 0.00200 | 108.49 | LBP | 0.00 | |
| | | | | 04/03/06 | 04/28/06 | MC | 0.00 | 0.00000 | 0.00 | LBMC | 0.00 | |
| | | | | 04/03/06 | 04/28/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |
| 7950112 | BAG SPECIALISTS,INC. | 09/19/06 | CC | 04/03/06 | 04/28/06 | F | 47.00 | 11.50000 | 5405.00 | LBH | 0.00 | AM8640 |
| | | | | 04/03/06 | 04/28/06 | GW | 0.00 | 0.00200 | 0.00 | LBP | 0.00 | |
| | | | | 04/03/06 | 04/28/06 | MC | 0.00 | 0.00000 | 0.00 | LBMC | 0.00 | |
| | | | | 04/03/06 | 04/28/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |
| 7950112 | BAG SPECIALISTS,INC. | 02/09/07 | CS | 04/03/06 | 04/28/06 | F | 16.09000 | | 450.15 | LBP | 450.15 | AP1572 |
| | | | | 04/03/06 | 04/28/06 | GW | 0.00 | 0.00200 | 0.00 | LBP | 0.00 | |
| | | | | 04/03/06 | 04/28/06 | MC | 0.00 | 0.00000 | 0.00 | LBMC | 0.00 | |
| | | | | 04/03/06 | 04/28/06 | HW | 0.00 | 0.00000 | 0.00 | LBHW | 0.00 | |

```
TOTALS FOR Employer Number 7950112        245579.02        16054.87        450.15
                                          =========        ========        ======
```

10:08:23 Jul 03 2008        ** E M P L O Y E R   R E C E I P T S   R E P O R T **        Page 2

JOBBER LEDGER

*** GRAND TOTALS ***

| Emp Num | PAID FOR | Dep | Date | DpTy | PER FROM | PER TO | App | Rep Qty | Rate | Rep Amount | Fund | Report Bal. | Rpt Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | F | 93.00 | 11.50000 | 10695.00 | LBH | 0.00 | |
| | | | | | | | F | 0.00 | 16.09000 | 0.00 | LBH | 0.00 | |
| | | | | | | | | 93.00 | | 10695.00 | | 0.00 | |
| | | | | | | | GW | 122743.01 | 0.00200 | 2905.01 | LBP | 450.15 | |
| | | | | | | | GW | 122743.01 | 0.00200 | 2454.86 | LBV | 0.00 | |
| | | | | | | | | 245486.02 | | 5359.87 | | 450.15 | |
| | | | | | | | MC | 0.00 | 0.00000 | 0.00 | LBMC | 0.00 | |
| | | | | | | | HH | 0.00 | 0.00000 | 0.00 | LBHH | 0.00 | |
| | | | | | | | | 245579.02 | | 16054.87 | | 450.15 | |

TOTAL EMPLOYERS : 1
TOTAL REPORTS   : 7

```
100p16.6h8.5v0s0b409975.25C10:08:23 Jul 03 2008          ** E M P L O Y E R   R E C E I P T S   R E P O R T **

** Prep Criteria Page **

Run Number                                : A29316
Criteria Name                             : ESTHER ACT PRE
Include Zero Reported Hours               : Y
Include Zero Computed Hours               : Y
Include Zero Reported Dollars             : Y
Include Zero Computed Dollars             : Y
Include Underpaid                         : Y
Include Overpaid                          : Y
Basis For Underpaid/Overpaid              : EGCP
Minimum Discrepancy Amount                : 1.00
Discrepancy method                        : Reported Qty * Rate vs Reported Amt
Only Include Funds That Meet Criteria     : Y
Employer Reports, Purchases, or Refunds:  : E
Employer Status Dates                     : Both
Contract Link Dates                       : B

Single/List/All                           : A
List Name/Key                             :
Employer/Report Reference Number          :
Receive From Date                         :
Receive Thru Date                         :
Posting From Date                         :
Posting Thru Date                         :
Work Period From                          : 200601
Work Period Thru                          : 200612
Close Period From                         :
Close Period Thru                         :
Deposit Date From                         :
Deposit Date Thru                         :
Employer Status From Date                 : 07/03/2008
Employer Status Thru Date                 : 07/03/2008
Contract Effective Date                   :
Contract Expiration Date                  :

Group          Contract        App            Area           Dep Type       Region         Rate           Local          Association Empl Type
To Include     To Include      To Include     To Include     To Include     To Include     To Include     To Include     To Include
===========    ===========     ===========    ===========    ===========    ===========    ===========    ===========    ===========
                                                             CAI
                                                             CAL
                                                             CC
                                                             CS
                                                             CA
                                                             JE
                                                             BW
                                                             DP
                                                             CP

Fund           Dist. Cncl      Employer Sts   Remitter
To Include     To Include      To Include     To Include
===========    ===========     ===========    ===========

               Tax Id (EIN)    Employer Sts
               To Include      To Include
               ===========     ===========
               7950112
```

10:08:23 Jul 03 2008    ** E M P L O Y E R   R E C E I P T S   R E P O R T **

** Print Criteria Page **

Run Number        :                                    : A29316
Criteria Name     :                                    : EF ACT2 JOB ALL
Sort By           : Employer Name
                    Work Period
Total By          : Employer Number
Break Page        : Employer Number

Report Title              : JOBBER LEDGER
Print Employer Address    : N
Print Employer Audit Info : N
Employer Report Count     : G
Total Funds Within Refno  : N
Use Fund Distribution     : N
Print Blank Line bet. Refno. : N
Employer Status Date      : Both
Contract Link Date        : Both
Break Down Totals By Fund : N

Single/List/All           : A
Employer/Report Reference Number :
List Name/Key             :
Receive From Date         :
Receive Thru Date         :
Posting From Date         :
Posting Thru Date         :
Work Period From          : 200603
Work Period Thru          : 200604
Close Period From         :
Close Period Thru         :
Totals Only               :
Deposit Date From         :
Deposit Date Thru         :
Employer Status From Date : 07/03/2008
Employer Status Thru Date : 07/03/2008
Contract Effective Date   :
Contract Expiration Date  :

| Group To Include | Fund To Include | Contract To Include | App To Include | Area To Include | Dep Type To Include | Region To Include | Rate To Include | Local To Include | Association To Include | Empl Type To Include |
|---|---|---|---|---|---|---|---|---|---|---|
| ========= | ========= | ========= | ========= | ========= | CAL | ========= | ========= | ========= | ========= | ========= |
| | | | | | JE | | | | | |
| | | | | | CP | | | | | |
| | | | | | BW | | | | | |
| | | | | | DP | | | | | |
| | | | | | CA | | | | | |
| | | | | | CS | | | | | |
| | | | | | CC | | | | | |
| | | | | | CAI | | | | | |

Dist. Cncl   Tax Id (EIN)   Employer Sts Remitter
To Include   To Include     To Include
=========    =========      =========
                            7950112

Field          Fund          App          Shift          Detail

Fund/App/Shift Criteria
=============  =========     =========     =========      =========

**EXHIBIT D**

AGREEMENT AND DECLARATION OF TRUST
UNITE HERE NATIONAL HEALTH FUND

Amended and Restated Effective as of December 31, 2006

12301591.1

Section 4.04    An Employer is obligated to furnish to the Trustees or their designee information and/or reports, in such form and manner as required by the Trustees, which may include the names of the employees, their Social Security numbers, the hours worked by each employee (including employees not covered by the Fund's plan of benefits as the Trustees may reasonably require), paid hours, unpaid hours, vacation, sick leave and such other information as the Trustees may require in connection with the administration of the Fund.

Section 4.05    An Employer is obligated to make available to the Trustees, the Fund's counsel, auditors, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll and/or other records whenever the Trustees consider such an examination to be reasonably necessary or appropriate.

Section 4.06    If the Trustees or Administrator deem(s) it necessary or appropriate to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the Fund or its designee (the "Auditor") its payroll and other personnel and financial records with respect to present or former employees of the Employer which are necessary for the Auditor to determine the accuracy and completeness of the Contributions remitted to and the reports filed with the Fund by the Employer.

Section 4.07    No Employer shall be entitled to, or may require, the return of any part of the Fund or any part of its Contributions or other payments except that: (a) a Contribution that is made by an Employer by a mistake of fact or law may, if the Trustees conclude that the facts and circumstances so warrant, be credited to the Employer (except as otherwise determined by the Trustees) by the Trustees within six (6) months after the Trustees, in their sole discretion, determine that the Contribution was made by mistake; and (b) a Contribution conditioned upon the deductibility of the Contribution under the Code may be credited to an Employer by the Trustees, at the discretion of the Trustees, within one (1) year after a disallowance of the deduction.

## ARTICLE V – DEFAULT BY AN EMPLOYER

Section 5.01    The Trustees shall from time to time adopt a collection policy that shall provide that an Employer who does not make Contributions within a certain time frame shall be deemed in default of its obligations under the Trust Agreement. If an Employer defaults on its obligations to make Contributions to the Fund, the Trustees or the Administrator may commence against the Employer, or any other individual or entity that may be liable to the Fund for the Contributions, an action in court or an arbitration. The Employer (or other individual or entity) shall be liable to the Fund for all costs incurred by the Fund in collecting such delinquent amounts, including arbitration fees, interest, auditors' fees, attorneys' fees and costs, court costs (including filing fees and service of process costs), incurred by the Fund in the collection of the Employer's Contributions or other payments. The Employer (or other individual or entity) shall also be liable to the Fund for: interest at the rate of one percent (1%) per month or part thereof or at such other rate as the Trustees may from time to time determine, and liquidated damages at an amount equal to the greater of interest on the delinquent Contributions or twenty percent (20%) of the delinquent Contributions.

10301591.1

AGREEMENT AND DECLARATION OF TRUST
UNITE HERE NATIONAL RETIREMENT FUND

Amended and Restated Effective as of December 31, 2006

2501590.1

may reasonably require), paid hours, unpaid hours, vacation, sick leave and such other information as the Trustees may require in connection with the administration of the Fund.

Section 4.    An Employer is obligated to make available to the Trustees, the Fund's counsel, auditors, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll and/or other records whenever the Trustees consider such an examination to be reasonably necessary or appropriate.

Section 5.    If the Trustees or Administrator deem(s) it necessary or appropriate to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the Fund or its designee (the "Auditor") its payroll and other personnel and financial records with respect to present or former employees of the Employer which are necessary for the Auditor to determine the accuracy and completeness of the Contributions remitted to and the reports filed with the Fund by the Employer.

Section 6.    No Employer shall be entitled to, or may require, the return of any part of the Fund or any part of its Contributions or other payments except that:  (a) a Contribution that is made by an Employer by a mistake of fact or law may, if the Trustees conclude that the facts and circumstances so warrant, be credited to the Employer (except as otherwise determined by the Trustees) by the Trustees within six (6) months after the Trustees, in their sole discretion, determine that the Contribution was made by mistake; and (b) a Contribution conditioned upon the deductibility of the Contribution under the Code may be credited to an Employer by the Trustees, at the discretion of the Trustees, within one (1) year after a disallowance of the deduction.

B.    DEFAULT BY AN EMPLOYER

Section 1.    The Trustees shall from time to time adopt a collection policy that shall provide that an Employer who does not make Contributions within a certain time frame shall be deemed in default of its obligations under the Trust Agreement. If an Employer defaults on its obligations to make Contributions to the Fund, the Trustees or the Administrator may commence against the Employer, or any other individual or entity that may be liable to the Fund for the Contributions, an action in court or an arbitration. The Employer (or other individual or entity) shall be liable to the Fund for all costs incurred by the Fund in collecting such delinquent amounts, including arbitration fees, interest, auditors' fees, attorneys' fees and costs, court costs (including filing fees and service of process costs), incurred by the Fund in the collection of the Employer's Contributions or other payments. The Employer (or other individual or entity) shall also be liable to the Fund for: interest at the rate of one percent (1%) per month or part thereof (or at such other rate as the Trustees may from time to time determine), and liquidated damages at an amount equal to the greater of interest on the delinquent Contributions or twenty percent (20%) of the delinquent Contributions.

Section 2.    In the event that an Employer fails:  to provide adequate reports or records; to provide adequate information when the Trustees or the Administrator request such information pursuant to the Retirement Plan, this Agreement, or the applicable law; or to permit audits by the Fund, the Trustees or Administrator may a commence legal action in court or an

4

**EXHIBIT E**

# ▲ Amalgamated Life

ESTHER FUCALORO
Audit Manager

730 Broadway
New York, NY 10003-9511
212-539-4203
(Fax) 212-844-7798
email: efucaloro@amalgamatedlife.com

July 16, 2007

Richard Krauser
Bag Specialists Inc.
900 Passaic St
East Newark, NJ 07029

Account#: 7950112
Bill#: 07CT35
Period: 01/01/03-12/31/05
Amount: $98,846.69

Dear Mr. Krauser:

Enclosed you will find a copy of our "Summary of Audit Findings" for Health and Retirement Benefit Fund contributions. This is based on our audit of your books and records for the period listed above. The amount due is attributable to the following:

1. The firm under-reported bargaining unit employees payroll for health (percentage), pension and vacation.
2. The firm under-reported bargaining unit employees payroll for insurance (per capita).
3. The firm skipped per capita health payments for June, July and August 2003.
4. The firm did not make any contributions to the Headwear Pension Fund for the period of May 2003 to December 2005.

Below is the break down of the audit bill:

| | |
|---|---|
| Funds Due for Health (percentage of payroll) | $4,949.22 |
| Funds Due for Health (per capita) | 37,260.00 |
| Funds Due for Retirement (Luggage) | 4,303.15 |
| Funds Due for Retirement (Headwear) | 39,720.57 |
| Interest Charges | 12,613.75 |
| Total Amount Due | $98,846.69 |

Should you have any question please contact me as soon as possible but no later than sixty (60) days from the date of this letter. If you have no questions, payment is due in full no later than sixty-five (65) days from the date of this letter.

This "Preliminary Summary of Audit Findings" does not include payments in transit and only includes payments deposited as of the date printed on the bill.

Thank you for your anticipated cooperation regarding this matter, I can be reached at 212 539-4203.

Sincerely,

Esther Fucaloro

Esther Fucaloro
Audit Manager

C: Robert Jordan, Manager, Disability Services & Allied Workers Jt. Bd., UNITE HERE

# UNITE HERE FUND ADMINISTRATORS
## 212-539-4203
## PRELIMINARY AUDIT FINDINGS

Page 1 of 1

Date: 07/16/07
Firm #: 7950112
Association:
Audit Period: 01/01/03 - 12/31/05
Remitted Thru: 12/31/05
Interest: 9.00% COMPOUNDED

BILL: 07C735

TO: BAG SPECIALISTS INC.
900 PASSAIC STREET
EAST NEWARK, NJ 07029

| LINE # | DESCRIPTION | PERIOD FROM | THRU | CHARGEABLE | REPORTED | NOT REPORTED | RATE | FUNDS DUE | # OF MO. | INTEREST RATE | INTEREST DUE | TOTAL DUE FUNDS + INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Insurance | 01/01/03 - | 04/30/03 | $ 246,356.98 | $ 233,435.62 | $ 12,921.36 | 5.00% | $ 646.07 | 50 | 0.4529% | $ 292.64 | $ 938.71 |
| 2 | Luggage Vacation | 01/01/03 - | 12/31/05 | $ 2,320,839.86 | $ 2,105,682.26 | $ 215,157.58 | 2.00% | $ 4,303.15 | 18 | 0.1439% | $ 619.48 | $ 4,922.63 |
| | Subtotal | | | $ 2,567,196.84 | $ 2,339,117.90 | $ 228,078.94 | | $ 4,949.22 | | | $ 912.12 | $ 5,861.34 |
| 3 | Insurance (Per Capita) | 05/01/03 - | 12/31/05 | $ 1,653.00 | $ 1,329.00 | 324.00 | 115.00 | $ 37,260.00 | 18 | 0.1439% | $ 5,363.96 | $ 42,623.96 |
| | Subtotal | | | $ 1,653.00 | $ 1,329.00 | 324.00 | | $ 37,260.00 | | | $ 5,363.96 | $ 42,623.96 |
| 4 | Luggage Pension | 01/01/03 - | 12/31/05 | $ 2,320,839.86 | $ 2,105,682.28 | 215,157.58 | 2.00% | $ 4,303.15 | 18 | 0.1439% | $ 619.48 | $ 4,922.63 |
| | Subtotal | | | $ 2,320,839.86 | $ 2,105,682.28 | 215,157.58 | | $ 4,303.15 | | | $ 619.48 | $ 4,922.63 |
| 5 | Headwear Pension | 05/31/03 - | 12/31/05 | 248,253.57 | - | 248,253.57 | 0.16 | $ 39,720.57 | 18 | 0.1439% | $ 5,718.19 | $ 45,438.76 |
| | Subtotal | | | 248,253.57 | - | 248,253.57 | | $ 39,720.57 | | | $ 5,718.19 | $ 45,438.76 |

TOTAL FUNDS DUE $ 86,232.94

TOTAL INTEREST DUE $ 12,613.75

TOTAL DUE FUNDS + INTEREST $ 98,846.69

Please issue check and mail with copy of this invoice to:
UNITE HERE National Health Fund
PO Box 1426 GPO
New York, NY 10116-1426

DISPUTES MUST BE SUBMITTED IN WRITING WITHIN 60 DAYS. FULL PAYMENT IS DUE WITHIN 60 DAYS IF NO DISPUTE SUBMITTED.
IF TOTAL DUE IS A CREDIT, PLEASE APPLY CREDIT TO NEXT MONTH'S REMITTANCE AND ATTACH A COPY OF THIS INVOICE.

**EXHIBIT F**

```
** EMPLOYER CONTRACT LINK **- 11:42:02 Jul 03 2008 -     pts101     S.UPD.CON.LINK

Employer : 7950112     - BAG SPECIALISTS,INC.
Group    : LB          - LUGGAGE & BRUSHES

PAGE 1 OF 1 **

Seq Contract Name                              Effective  Expiration Prev   Area
... ............                              .........  .......... ....   ....
IR003   INS 5.0% RET 2.0% VAC 2.0  05/01/1999 04/30/2003 IR002
V001    VAC FUND 2.0%                01/01/1997 04/30/2003
IR002   INS 4.0%,RET 0%,VAC 2.0%     01/01/1997 04/30/1999


Select: X _____

<SD#>StsDt <DP>Cntrc <AI#>Add'l Inf <WV#>Waiver <CI#>Cap <CG#>Clg
<F>File <P>Upd <A>Add <D#>Del <S>Scr <B>Bck <P#>Pge <X>eXit
```